JUSTICE HUNT
dissenting.
I dissent. The majority opinion ignores the obvious and clearly stated reason for Hafner’s dismissal and, further, countenances a *103 result which the Department’s own regulations would not allow, if they were correctly followed.
1. The reason for Hafher’s termination was his status as a plaintiff in a case against Conoco.
This Court usually adheres to the general legal principle that, in the absence of an ambiguity, a document should be presumed to mean precisely what it says. We have repeatedly acknowledged this principle when construing contracts and statutes. See, for example, Carbon County v. Dain Bosworth, Inc. (1994), 265 Mont. 75, 874 P.2d 718; Farmers Alliance Mutual Insurance Co. v. Holeman (Mont. 1996), 924 P.2d 1315, 53 St.Rep. 904. Yet, for some reason, the majority ignores this very sensible legal rule in this case.
The dismissal letter from DuBray to Hafher states, unequivocally and in plain English, “[t]he reason for [Hafner’s] termination for cause is that [he is] the Plaintiff in a lawsuit entitled Hafner v. Conoco.” Nothing could be clearer. The majority, however, goes to great lengths to attempt to show that, while that may be what the letter says, that is not what the letter means. The majority contends that “[w]hen that statement is put in the context of the whole letter, it is apparent that [Hafher] was terminated not for suing Conoco, but for failing to advise DuBray that he was suing Conoco ...” Such a conclusion is not apparent to me. The termination letter means no more, and no less, than exactly what it says: Hafner was fired because he was the plaintiff in a lawsuit against Conoco. Such a firing is plainly illegal under § 49-2-301, MCA.
2. There is a significant difference between an actual conflict of interest and a potential conflict of interest.
The majority opinion fails to distinguish between a potential conflict of interest and an actual conflict of interest when the recognition and application of this distinction is crucial to the fair disposition of this case. Instead, the majority presumes the existence of an actual conflict of interest throughout its opinion, and this presumption dictates the opinion’s obvious result.
In making such a presumption, the majority perpetuates an error originally made by the hearings examiner, whose findings and conclusions were accepted without question at every level. Like the majority of this Court, the hearings examiner failed to distinguish between an actual and a potential conflict of interest, but instead proceeded under the erroneous assumption that the there is no difference between the two.
*104 In contrast, Hafner himself distinguished between an actual and a potential conflict of interest and has tried without success to make those involved in the appeals process understand what he was talking about. At the hearing, Hafner testified as follows:
Q: In any event you see and would agree with me that at a minimum your claim against Conoco, Inc., could be potentially a conflict of interest, is that correct?
Hafner: Potentially?
Q: Yes.
Hafner: Yes, I’ll agree with potentially.
Q: Okay. And you don’t think that it ever turned into a conflict of interest because you governed yourself so that you did the best work possible, you put to the side your lawsuit against Conoco, Inc., and you did the job well and satisfactory [sic], is that a fair characterization?
Hafner: That’s fair.
Hafner did not feel that his actions constituted misconduct because the potential conflict of interest (which he freely acknowledged existed) never ripened into an actual conflict of interest. As noted above, this is a distinction that the hearings examiner never addressed. Instead, the examiner found that Hafner was “discharged from employment for failing to disclose a potential conflict of interest to [his] employer.” (Emphasis added). The examiner further concluded that this failure to disclose a potential conflict, of interest constituted misconduct and that DuBray’s firing of Hafner was justified because of this misconduct.
But on its “claimant separation information” form, the Department itself states that “ [t] o justify a finding of misconduct it must be shown that the matter was within the individual’s control and the behavior must have had a direct adverse effect on the employer’s business interests.” (Emphasis added.) By this definition, the Department implicitly recognizes the difference between a potential conflict of interest, which does not directly adversely impact the employer’s interests, and an actual conflict of interest, which does. In order for an employee’s actions to constitute misconduct, the employer must show the existence of an actual conflict of interest which has a direct adverse effect on his business.
DuBray was asked during the hearing to explain how his business had been impacted by Hafner’s actions. He replied that “we haven’t done a billable hour for Conoco since [Hafner] left our employ.” Yet *105 there is no explanation for how or why Hafner was responsible for this. Asked again what business interests Hafner’s actions affected, DuBray responded,
It affects my, the, my agent/client relationship that I have, and the fact that Mr. Hafner was carrying a checkbook that was Conoco’s checkbook, and my checkbook and that he had an obligation to me to notify me of any potential conflicts of interest that he had. To notify Dubray Land Services. He did not.
(Emphasis added.) DuBray’s response does not reveal any direct adverse effect on his business; rather, it reveals his belief that his firing of Hafner for a potential conflict of interest was justified. The fact is, however, that neither DuBray’s testimony nor any other evidence presented demonstrated the direct adverse effect on the employer’s business which is a prerequisite for a finding of misconduct.
Hafher’s potential conflict of interest did not rise to the level of an actual conflict of interest. It did not have a direct adverse impact on DuBray’s business and therefore did not constitute misconduct. Without a finding of misconduct, DuBray’s firing of Hafiier was not justified, and the hearings examiner’s findings to the contrary are clearly erroneous. For these reasons, I dissent from the majority opinion.
JUSTICE TRIEWEILER concurs in the foregoing dissent.