Julie **ROBIDOUX**, Individually and on behalf of all persons similarly situated, **Plaintiff–Appellant,**

**Kathleen Rock**, Individually and on behalf of all persons similarly situated and **Margaret Bevins**, Individually and on behalf of all persons similarly situated, **Plaintiff–Intervenors–Appellants,**

**Michelle Trayah**, Individually and on behalf of all persons similarly situated, **Plaintiff–Intervenor,**

v.

Veronica **CELANI**, Individually and in her capacity as Commissioner of the Vermont Department of Social Welfare, **Defendant–Appellee.**

**No. 565, Docket 92–7709.**

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1992.

Decided March 10, 1993.

Stephen Norman, Burlington, VT (Thomas F. Garrett, Vermont Legal Aid, Inc., on the brief), for plaintiff-appellant.

Christina Byrom, Asst. Atty. Gen. of the State of Vt., Waterbury, VT (Asst. Attys. Gen. Office, on the brief), for defendant-appellee.

Before FEINBERG and KEARSE, Circuit Judges, and PECKHAM, District Judge *.

PECKHAM, Senior District Judge **.

This is an action by three recipients of public assistance in Vermont seeking to represent a class of persons whose applications for public assistance have been delayed unlawfully by the Vermont Department of Social Welfare (Department). Appellants Julie Robidoux, Kathleen Rock and Margaret Bevins appeal from a judgment of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, dismissing their lawsuit brought under 42 U.S.C. section 1983. Appellants challenge the district court's refusal to certify their suit as a class action and the district court's subsequent dismissal of the suit as moot. For the reasons stated below, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEEDINGS BELOW

The Vermont Department of Social Welfare administers several public assistance programs, including the Food Stamp Program, the Aid to Needy Families with Children Program (ANFC) (known as Aid to Families with Dependent Children, or AFDC, in the federal lexicon), and the Supplemental Fuel Assistance Program (Fuel Assistance). Federal regulations require state social welfare agencies to determine applicants' eligibility for public assistance programs within certain time periods. State agencies must make eligibility decisions for the Food Stamp program within 30 days of the date of application. 7 C.F.R. § 273.2(g). The agencies must determine an applicant's eligibility for the ANFC program within the time set by state law, not to exceed 45 days. 45 C.F.R. § 206.-10(a)(3)(i). Vermont's welfare regulations require the Department to decide upon ANFC applications within 30 days. Vermont Welfare Assistance Manual § 2210. Thus, the Department must make decisions on both Food Stamp and ANFC applications within 30 days of the date of application. The deadlines do not apply where the Department cannot make a timely decision because of an applicant's delay in completing the application. Vermont Welfare Assistance Manual § 2210 (ANFC); 7 C.F.R. § 273.2(h) (Food Stamp).

The sole source of income for Julie Robidoux, Kathleen Rock, and Margaret Bevins and their families is public assistance, unemployment insurance, or social security benefits. In spring 1991, finding their resources inadequate to support their families, Robidoux, Rock, and Bevins applied for Food Stamp and/or ANFC benefits to supplement their incomes. The Department did not process any of these applications within the 30-day deadlines.

---

* Honorable Robert F. Peckham, Senior Judge of the United States District Court for the Northern District of California, sitting by designation. Judge Peckham died in February 1993. Prior to

his death he participated in the consideration and decision of this case.
** Judge Peckham was the principal author of the opinion of the Court.

Toward the end of 1990, during a time of economic recession, community organizations in Vermont were receiving more and more requests for aid in following up on applications for public assistance which had been pending more than 30 days. Appellants were among those referred to Vermont Legal Aid (VLA) in the spring of 1991. Assisted by VLA, Robidoux filed suit in April 1991 alleging delays by the Department in processing applications for ANFC, Food Stamps, and Fuel Assistance and seeking class-based injunctive relief. At the time Robidoux filed suit, she had received her Food Stamps but had not yet received her ANFC benefits. Rock and Bevins later filed motions to intervene in this suit.[1] At the time of their interventions, neither had received her benefits. All three appellants subsequently received benefits retroactive to their applications.

The plaintiff and intervenors moved, pursuant to Fed.R.Civ.P. 23(b)(2), to certify as a class "[a]ll current and future Vermont applicants for assistance from the Food Stamp, ANFC, and Fuel Assistance Programs." In support of their motion for class certification, Appellants submitted two documents. One was a letter from the Department's Commissioner to the U.S. Department of Agriculture which indicated that from July to September 1990, 8 percent of the approximately 800 monthly Vermont Food Stamp applications, or about 65 applications per month, had taken more than 30 days to process. (Joint Appendix ("JA") at 57.) The second document was a monitoring record by the U.S. Department of Health and Human Services, which indicated that 71 of 4017, or nearly 2 percent, of quarterly ANFC applications had taken the Department more than 45 days to process during that same period. (JA at 56.)

The district court denied the motion for class certification. (Order of June 11, 1991, JA at 61.) The district court concluded that Appellants had not shown sufficient evidence of numerosity, because

[p]laintiff has the burden to show that the class is so large that joinder is impos-

sible. Plaintiff has only shown three people who may be affected, and speculatively an undetermined number of future class members.

(JA at 61–62.) The court also found that Appellants' situation was not typical of a pattern of delay as to Food Stamp, ANFC, and Fuel Assistance applicants, because there was no showing of any delay or refusal by the Fuel Assistance program. Further, the court found that there was no showing of significant possibility of future harm, and that "without a showing of continuous harm plaintiff ha[d] no standing to represent a class." (JA at 62.)

In support of their motion for reconsideration of the denial of class certification, Appellants submitted a Department report showing overdue applications for May 1990, December 1990, and February 1991. (JA at 80.) This document indicated that decisions in ANFC were overdue in 22 cases (6% of 365 cases) in May 1990, 74 cases (14% of 528) in December 1990, and 68 cases (13% of 522) in February 1991. (JA at 81, 86.) Overdue Food Stamp decisions totalled 52 cases (10% of 518) in May 1990, 133 cases (15% of 884) in December 1990, and 113 cases (13% of 867) in February 1991. (JA at 82, 87.) The study indicated that an increase in applications caused the increase in overdue cases. (JA at 83.) The district court denied the motion for reconsideration on the same basis as its earlier order. (Order of August 28, 1991, JA at 96.)

Appellants then moved for summary judgment, and defendant made a cross-motion for summary judgment. The district court granted summary judgment for defendant, ruling that Appellants' claims were moot. The court found that there was not a reasonable expectation that Appellants would be subjected to the same harm in the future. (Order of June 2, 1992, JA at 136–37.)

## II. DISCUSSION

Appellants argue that 1) they have met the requirements for class certification, 2)

---

1. Michelle Trayah also filed a motion to intervene at an early stage of this litigation. After it was later disclosed that she had not suffered

unlawful delays in applying for public assistance, her claims were dismissed by stipulation prior to final judgment.

they have standing, and 3) their claims are not moot. As to the claims with respect to Food Stamps and ANFC, we agree. With respect to alleged delays in processing applications for Fuel Assistance, we conclude that further consideration is warranted.

### A. Class Certification

■ If the district court has applied the proper legal standards in deciding whether to certify a class, its decision may be overturned only if it has abused its discretion. *Johnpoll v. Thornburgh*, 898 F.2d 849, 852 (2d Cir.) (per curiam), *cert. denied*, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990). At the same time, however, abuse of discretion can be found more readily on appeals from the denial of class status than in other areas, for the courts have built a body of case law with respect to class action status. *Abrams v. Interco Inc.*, 719 F.2d 23, 28 (2d Cir.1983). Accordingly,

> [e]xcept to the extent that the ruling is based on determinations of fact and is thus protected by Fed.R.Civ.P. 52(a) or where the trial judge's experience in the instant case or in similar cases has given him a degree of knowledge superior to that of appellate judges, as often occurs, review of class action determinations for "abuse of discretion" does not differ greatly from review for error.

*Id.* at 28.

Rule 23(a) sets forth the requirements for class certification and requires a potential class representative to show:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Appellants challenge the district court's rulings on numerosity and typicality.

#### 1. Numerosity

Appellants first argue that the district court applied an incorrect legal standard in requiring plaintiffs to show the existence of a class so numerous that "joinder is impossible," while Rule 23(a) requires a finding that the numerosity makes joinder of all class members "impracticable."

■ Impracticable does not mean impossible. *See, e.g., Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964); *Advertising Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956); *Goldstein v. North Jersey Trust Co.*, 39 F.R.D. 363, 367 (S.D.N.Y.1966) (impracticable does not mean " 'incapable of being performed' or 'infeasible' "); 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1762, at 159 (1986); 3B *Moore's Federal Practice* ¶ 23.05[3], at 23–156 (2d ed. 1992). Thus, the district court in the present case, in concluding that numerosity was lacking because plaintiffs had not shown the class to be so large that joinder was "impossible," applied the wrong standard.

■ Appellants further contend that, under the proper standard, they met the burden of showing numerosity. We agree. Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement. *See, e.g., Barlow v. Marion County Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D.Fla.1980) (as the bearers of the burden to show joinder is impracticable, "[p]laintiffs must show some evidence of or reasonably estimate the number of class members" but "need not show the exact number"); *see also* 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 139 (2d ed. 1985).

Appellants presented documentary evidence of delays in 22 to 133 cases per month, depending on the month and whether the assistance sought was Food Stamps or ANFC. Other government benefits cases have held that class representatives who presented similar numbers of potential class members satisfied the numerosity requirement. *See, e.g., Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (a court "may certify a class even if it is composed

of as few as 14 members"); *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y.1980) ("hundreds" of welfare recipients); *Hurley v. Toia*, 432 F.Supp. 1170, 1174 (S.D.N.Y.) (same), *aff'd mem.*, 573 F.2d 1291 (2d Cir. 1977). A leading treatise concludes, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable. 1 Newberg, *supra*, § 3.05, at 141–42.

The Department contends on appeal, however, that not all of the delayed cases included in the figures provided to the court can be attributed to Departmental fault. The Department argues that the figures included cases in which applications were delayed by applicants themselves (for example, those in which the applicant did not provide the necessary information to the Department). The Department conceded at oral argument that it does not keep records of the reasons for the delays and so cannot provide an exact number of persons delayed by applicant fault. Plaintiffs have presented documentary evidence of delays in a sufficient number of cases to meet the numerosity requirement. The Department cannot prevail by claiming that delays are due to applicant fault and meanwhile fail to document its claim. *See also* Vermont Welfare Assistance Manual § 2210 (Department "must document the cause for delay" in processing ANFC applications.). Furthermore, the Department's own report concluded that the delays were caused by the increase in applications, not applicants' delays. (JA at 80, 83.)

■ The district court also failed to address other factors relevant to the practicability of joinder. Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968). Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

1 Newberg, *supra*, § 3.06, at 143; *see Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."); *McDonald v. Heckler*, 612 F.Supp. 293, 300 (D.Mass.1985) (poverty), *modified on other grounds*, 795 F.2d 1118 (1st Cir.1986); *Arthur v. Starrett City Assoc.*, 98 F.R.D. 500, 505–06 (E.D.N.Y.1983) (fluctuating membership); *Marcera v. Chinlund*, 91 F.R.D. 579, 583 (W.D.N.Y. 1981) (statewide distribution); *Folsom v. Blum*, 87 F.R.D. at 445 (fluctuating membership).

Many of these additional factors are present in this case. Consolidating in a class action what could be over 100 individual suits serves judicial economy. Moreover, the potential class members are distributed over the entire area of Vermont. They are also economically disadvantaged, making individual suits difficult to pursue. An injunction requiring the Department to comply with the statutory deadlines would affect all potential class members, and individual suits could lead to potentially inconsistent results.

Thus, the district court abused its discretion in determining that the class was not so numerous that joinder of all members would be impracticable.

## 2. Typicality

■ Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed,* — U.S. —, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *see* 7A Wright, *supra*, § 1764, at 243; *see also Inmates of the Attica Correctional Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971). When it is alleged that the same unlawful conduct was directed at or affect-

ed both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims. 1 Newberg, *supra*, § 3.13, at 167; 7A Wright, *supra*, § 1764, at 235–36. For example, in *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 596–98 (2d Cir.1986), the Second Circuit held that a district court had abused its discretion in decertifying a class in an employment discrimination case. The class representative alleged she was a victim of discriminatory denial of transfers, while she sought to certify a class of women suffering discrimination in advancement generally (e.g., through denial of transfer, fewer training opportunities, or lack of promotion). Evidence indicating that the employer discriminated *in the same general fashion* against the class representatives and against other members of the class was held sufficient to satisfy the typicality requirement. *Id.* at 598. The court relied, among other things, on evidence showing that many of the employment decisions were made by the same, central group of people within the employer's organization. *Id.; see also Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir.1968) (overturning a district court's denial of class certification, the court found that a plaintiff who purchased stock in reliance on one prospectus could represent those who purchased stock based on two other prospectuses, because misstatements were present in all three documents), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ The district court found that Appellants' claims were not typical of those of the class because there was no showing of delays in processing applications in the Fuel Assistance program. Though this may mean that the class to be certified should not include persons suffering delays with respect only to that program, the typicality requirement plainly was met with respect to persons suffering delays with respect to their applications for benefits under the other two programs. A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly. *See, e.g.*, 7B Wright, *supra*, § 1790, at 270–71. Though the court need not take on an onerous burden of identifying issues that may be appropriate for class-action treatment or of constructing subclasses pursuant to Fed.R.Civ.P. 23(c)(4) ("class may be divided into subclasses"; class action may be maintained "with respect to particular issues"), *see, e.g., United States Parole Commission v. Geraghty*, 445 U.S. 388, 408, 100 S.Ct. 1202, 1214, 63 L.Ed.2d 479 (1980); *Abrams*, 719 F.2d at 31, there was no undue burden here. Appellants asserted that there were delays in three well-defined public assistance programs, and it would have required little effort for the court, upon concluding that plaintiffs themselves had no claims with respect to one of the programs, to define the class as comprising persons claiming delays with respect to the other two. We conclude that the district court should have certified a class consisting at least of persons who suffered delays with respect to their applications for Food Stamps and ANFC.

In support of their request to represent persons suffering delays in the Fuel Assistance program, Appellants point out that though none of the named plaintiffs or intervenors had alleged delays in receiving benefits under that program, the Fuel Assistance program is seasonal and was not operating at the time the complaint was filed. They argue that since the Department administers collectively the ANFC, Food Stamp, and Fuel Assistance programs, and since there is a pattern of delay in the administration of the Food Stamp and ANFC programs, there is reason to expect similar delays in the Fuel Assistance Program during its season. According to Appellants, the Department, which processes the applications in all three programs, is acting in the same general fashion in all three programs by failing to act on applications within the 30–day deadlines (in the case of ANFC and Food Stamp) or within a time frame mandated by due process (in the case of Fuel Assistance). The evidence shows that this problem stems from the

same cause: an increase in the number of applications for public assistance.

We leave the matter of whether the class should include persons who suffered delays with respect to the Fuel Assistance program for further consideration by the district court. If, on remand, plaintiff or any intervenor can assert a claim that he or she is suffering delay in the processing of his or her own application for assistance under that program, the class action should be allowed to proceed with respect to that program.

## B. Jurisdictional Issues

The district court also ruled against Appellants on two jurisdictional questions. First, in its June 11, 1991 Order denying class certification, it held that the named Appellants lacked standing to represent the proposed class because they "ha[d] not shown that there [wa]s any significant possibility of future harm." (JA at 62.) Second, by the time of the court's June 2, 1992 ruling on the Department's motion for summary judgment, Appellants had received their benefits, and the court ruled that that fact, plus the lack of a showing that they would face similar delays in the processing of their benefits applications in the future, made their claims moot. (JA 135–37.) Appellants argue that since each of them was suffering from a delay at the time she filed her complaint or motion to intervene, they have standing to represent the proposed class, and that if the district court had certified the .class, there could have been no finding of mootness. With respect to the Food Stamp and ANFC programs, we agree.

### 1. Standing

■ "At the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *County of Riverside v. McLaughlin,* — U.S. —, —, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991) (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)).

For a plaintiff to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief "at that moment." *County of Riverside v. McLaughlin,* — U.S. at —, 111 S.Ct. at 1667. The plaintiff may meet this standard by alleging that the defendant was engaging in the unlawful practice against the plaintiff at the time of the complaint. *Id.; see also City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (standard also met where the plaintiff has suffered injury and there is a substantial likelihood that he or she will again be subjected to the allegedly unlawful policy in the future).

In the present case, the original plaintiff at the time the complaint was filed, and each intervenor at the time of her motion to intervene, was suffering from a delay beyond the period provided by federal law for the processing of her application for Food Stamp or ANFC benefits. Thus, at the material time, each plaintiff was suffering injury capable of being redressed by declaratory or injunctive relief. Accordingly, the district court erred in ruling that Appellants did not have standing to pursue this action or to represent the class of persons whose Food Stamp or ANFC benefits had similarly been unlawfully delayed.

On the present record, however, it does not appear that any of the present plaintiffs has standing to pursue a claim for delays in the Fuel Assistance program since none of them alleged that she was suffering such delays. If no such claim is asserted on remand, either by any of the present plaintiffs or by such additional plaintiff or plaintiffs as may be permitted to intervene, claims as to delays in the Fuel Assistance program should be dismissed.

### 2. Mootness

■ Finally, the fact that the plaintiffs received their unlawfully delayed benefits after the lawsuit was commenced did not mean that the action thereby became moot. Where class claims are inherently transitory, "the termination of a class representative's claim does not moot the

claims of the unnamed members of the class." *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975); *Sosna v. Iowa,* 419 U.S. 393, 401–02, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). Even where the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy. *See, e.g., County of Riverside v. McLaughlin,* —— U.S. at ——, 111 S.Ct. at 1667; *Sosna v. Iowa,* 419 U.S. at 402 n. 11, 95 S.Ct. at 559 n. 11.

In the present case, Appellants' claims are inherently transitory since the Department will almost always be able to process a delayed application before a plaintiff can obtain relief through litigation. Moreover, two of the Appellants have alleged that they expect to apply or be recertified for public assistance again in the future. (JA at 111, 114.) We determined above that Appellants met the Rule 23 requirements for class certification with respect to the Food Stamp and ANFC programs, and we conclude that that class should be certified on remand. The certification should relate back to the time of filing of the complaint. Thus, the class action is not moot, and summary judgment was inappropriate.

## CONCLUSION

The district court's judgment dismissing the complaint is vacated, and the case is remanded for further proceedings not inconsistent with the foregoing, including (a) certification of a class comprising at least "all current and future Vermont applicants for assistance from the Food Stamp and ANFC programs," and (b) further consideration of whether the class, or a subclass, may include persons with claims for delays with respect to the Fuel Assistance program.

Costs to appellants.