**Michele DUPREY, Individually and on Behalf of All Others Similarly Situated, Plaintiff,**

v.

**State of CONNECTICUT DEPARTMENT OF MOTOR VEHICLES, Defendant.**

**No. 3:96CV01679 (GLG).**

United States District Court, D. Connecticut.

March 20, 2000.

Gary Edward Phelan, Garrison, Phelan, Levin–Epstein, Chimes & Richardson, New Haven, CT, for Plaintiff.

Kenneth N. Tedford, Alan N. Ponanski, Attorney General's Office, Hartford, CT, for Defendant.

### Memorandum Decision

GOETTEL, District Judge.

Plaintiff, Michele Duprey, on behalf of herself and all others similarly situated, has challenged the State of Connecticut's imposition of a $5.00 fee for removable windshield placards that permit holders of the placards to use parking spaces reserved for persons with disabilities. *See* Conn. Gen.Stat. § 14–253a. In an earlier ruling on cross-motions for summary judgment, this Court held that these fees violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, ("ADA"), and the regulations promulgated thereunder. 28 F.Supp.2d 702, 711 (D.Conn.1998). Plaintiff has now moved for class certification, pursuant to Fed.R.Civ.P. 23 [Doc. # 21]. Plaintiff has asked this Court to certify a class defined as:

All purchasers of windshield placards pursuant to Conn. Gen.Stat. § 14–253a, since January 26, 1992, and all persons who will in the future be required to pay money for windshield placards unless and until declaratory and injunctive relief protects against the requirement of payment as a condition of access to parking accommodations reserved for persons with disabilities.

The class includes purchasers of all categories of additional and renewal placards, but does not encompass purchasers of temporary placards.

In support of her motion, plaintiff states that she and all members of the putative class are persons (or transport persons) with disabilities that limit or impair their ability to walk or who are blind, and who have been found by the State of Connecticut, Department of Motor Vehicles ("DMV"), to satisfy the criteria for a removable windshield placard as provided in Conn. Gen.Stat. § 14–253a(b). As defined, plaintiff and all members of the putative class have been or will be approved by the DMV for a placard and have obtained, or will obtain, a parking placard after payment of the required fee.

Defendant contends that certification should be denied because (1) issues of law and fact are not common to each proposed class member; (2) the ADA requires an individualized determination of disability; and (3) certification is not "necessary" for the ultimate and just adjudication of the present action. Additionally, defendant asserts that, to the extent that this Court certifies a class, the class should be limited to individuals who purchased parking placards within one year of the filing of this action, because all other claims are time-barred by Connecticut's one-year statute of limitations, Conn. Gen.Stat. § 4–148.

This Court has broad discretion in determining whether an action may be maintained as a class action. *See King v. Kansas City Southern Indus., Inc.*, 519 F.2d 20, 24–25 (7th Cir.1975). Plaintiff, as the moving party, bears the burden of demonstrating that all requirements for class certification have been met. *Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 325 (D.Mass.1997). In ruling on plaintiff's motion for class certification, we are to base our determination on the allegations of plaintiff's complaint, which allegations are to be accepted as true. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Moreover, the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation. *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972). Despite the liberal interpretation that this Court must give to Rule 23, however, we may certify a class action only after undertaking a "rigorous analysis" to assure that all of the requirements of Rule 23 have been met. *Civic Ass'n of the Deaf of N.Y.C. v. Giuliani*, 915

F.Supp. 622, 632 (S.D.N.Y.1996) (citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *see also Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996)(holding that the district court abused its discretion in certifying a class where it merely reiterated the class action requirements rather than addressing the requirements of Rule 23 in the context of the specific action). After undertaking this rigorous analysis, we have little difficulty in holding that class certification is appropriate. A more difficult question, however, is the proper definition of the class.

### Discussion

■ To maintain a class action under Fed. R.Civ.P. 23, plaintiff must first satisfy the four prerequisites of Rule 23(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the four prerequisites of Rule 23(a), plaintiff must satisfy one of the three subsections of Rule 23(b), which provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications

> > or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In this case, plaintiff seeks certification pursuant to Rule 23(b)(2) or, in the alternative, pursuant to Rule 23(b)(1).

### A. Rule 23(a)

#### 1. Numerosity

The first requirement imposed by Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable." Plaintiff estimates that approximately 100,000 persons and organizations have been required to pay a fee for parking placards since January 26, 1992, the effective date of Title II of the ADA. Thus, plaintiff asserts that the class of persons who have been or will be required to pay the DMV for a permanent windshield placard is so numerous that joinder of all parties is impracticable.

Defendant disagrees with plaintiff's estimate of the class size because, it maintains, not all placard owners in Connecticut meet the ADA's definition of "disabled." However, defendant concedes that whatever the actual

number, it would meet the numerosity requirement.

The Second Circuit in *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993), held that a plaintiff need not show the exact size of the putative class in order to satisfy the numerosity requirement, so long as the plaintiff shows some evidence of, or reasonably estimates, the number of class members. The Court noted that a leading treatise had concluded, "based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Id.* at 936 (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 141–42 (2d ed.1985)). Furthermore, the Court cited other factors relevant to the practicability of joinder, including judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief involving future class members. *Id.*

While we have no information concerning the financial resources of individual class members, the Court can confidently predict that not all class members would have the financial ability to institute a lawsuit against the State DMV to recover a $5.00 parking placard fee, nor would the institution of as many as 100,000 individual lawsuits serve the interests of judicial economy. Class members are located throughout the State of Connecticut, and, as yet unidentified class members would be affected by the prospective injunctive relief sought. Thus, in addition to the obvious numerosity of the proposed class, *see Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (finding that a class of over 100,000 was "obviously numerous"), the class also satisfies the requirement that joinder of all members would be impracticable. Accordingly, we find that the numerosity requirement of Rule 23(a)(1) is easily met by plaintiff's proposed class.

### 2. *Commonality*

Plaintiff next maintains that there are common questions of law and fact shared by all the parties. She argues that all of the issues pertinent to liability—*i.e.,* whether the fees charged for parking placards violate the ADA—are identical as to all class members, and all members equally seek as their remedy declaratory and injunctive relief, as well as reimbursement of past fees charged and collected by the DMV after January 26, 1992. Plaintiff states that the minuscule differences in damages between class members should not defeat class certification.

Defendant responds that there is insufficient commonality because of the differing degrees of disability among class members, which render the questions of law and fact common to one group of the proposed class inconsistent with the questions of law and fact common to another group. Moreover, defendant argues, the ADA and Connecticut's statute contain different "disability" standards. Defendant also points out that, unlike race and sex discrimination cases, discrimination cases under the ADA involve potential class members with varying degrees of disabilities, and such varying characteristics require an individualized, case-by-case determination. *See, e.g., Chandler v. City of Dallas,* 2 F.3d 1385, 1396 (5th Cir. 1993)(in a case challenging physical standards for certain city employees as violating the Rehabilitation Act, the court reversed the certification of a class of handicapped persons because the determination of whether an individual is handicapped was necessarily an individualized inquiry), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

In response, plaintiff cites to numerous decisions of other courts which have certified classes of disabled plaintiffs in placard-fee challenge cases. *See, e.g., Thrope v. State of Ohio,* 173 F.R.D. 483 (S.D.Ohio 1997); *Miller v. North Dakota Dept. of Transp.,* No. 96–C–1988, Slip Op. (N. Dak.Distr.Ct. Oct. 10, 1997); *Jason v. Wisconsin Dept. of Transp.,* No. 97 CV 3137 (Wis.Cir.Ct. Apr. 8, 1999). Plaintiff argues that these courts rejected the argument espoused by defendant that the proposed class is overbroad, and thus lacking commonality, because allegedly not everyone who bought a placard is covered by the ADA. Plaintiff also relies on these cases for their

finding that all placard purchasers, under comparable state laws, would be covered by the ADA. Plaintiff also distinguishes the other ADA cases cited by defendant as involving issues of reasonable, but necessarily different, accommodations for various handicaps, in contrast to the instant case, which does not present a question as to the type of accommodation needed for each member of the class. Rather the only issue presented in this case is the fee charged by DMV to all class members for the accommodation common to all members, *i.e.*, the parking placard.

As plaintiff correctly points out, no less than seven courts in parking placard cases have found the commonality requirement satisfied and have certified these cases as class actions. *See Thrope,* 173 F.R.D. 483; *Miller v. North Dakota Dept. of Transportation,* Slip Op. at 7–8; *Casner v. New Jersey Dept. of Motor Vehicles,* No. C 139 96, Slip Op. at ¶ 4 (N.J.Super.Ct. Oct. 15, 1997); *Rendon v. Florida Dept. of Highway Safety and Motor Vehicles,* No. 96–17716 CA (23), Slip Op. at 3 (Fla.Cir.Ct. Apr. 16, 1998); *McGarry v. Director, Dept. of Revenue, State of Missouri,* No. 96–4249–CV–C–66BA, Slip Op. at 2 (W.D.Mo. Nov.19, 1998); *Jason v. Wisconsin Dept. of Transp.,* No. 97CV3137, Slip Op. (Wisc.Cir.Ct. Apr. 8, 1999). In *Thrope,* the court held that "[t]here need be only a single question of law or fact common to all members of the class. [T]he mere fact that questions peculiar to each individual member of the class remain after the common questions have been resolved does not dictate the conclusion that a class action is impermissible." 173 F.R.D. at 488 (quoting *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988)) (internal quotations omitted). The Second Circuit, in a case where there were far greater differences among the claims of the class members, upheld the district court's finding of commonality, focusing on the broad, general scheme of the litigation, rather than the myriad constitutional, regulatory, and statutory provisions specifically invoked by each individual plaintiff. *Marisol A.,* 126 F.3d at 377 (finding the commonality requirement satisfied in a case brought on behalf of children who claimed they were deprived of services of the New York City welfare system, despite the unique circumstances of each child).

In the instant case, the class claims against the DMV arise out of a single set of operative facts, and are based on a single set of legal theories. *See Civic Ass'n of Deaf of N.Y.C.,* 915 F.Supp. at 633 (finding commonality requirement satisfied where class of deaf and hearing impaired individuals challenged City's removal of street alarm boxes and failing to provide adequate notification alternatives for hearing-impaired individuals).

Defendant has also argued that the ADA and Connecticut's statute have different standards of disability, thus defeating the commonality requirement. In Connecticut, parking placards may be obtained by any person who is blind, or by any person with disabilities which limit or impair the ability to walk as defined in 23 C.F.R. Part 1235.2. Conn. Gen.Stat. § 14–253a(b); Conn. Agencies Regs. § 14–253a–1(4). The ADA covers, *inter alia,* individuals who have a physical or mental impairment that substantially limits one or more of the major life activities. 42 U.S.C. § 12102(2)(A). The phrase "major life activities" is defined broadly to include such things as walking, seeing, breathing, and working. 29 C.F.R. § 1630.2(i). There can be no question that persons who are blind are protected by the ADA.[1] As for persons with disabilities which limit or impair the ability to walk, those who are eligible to obtain parking placards are limited to the specific groups defined in 23 C.F.R. Part 1235.2. Part 1235, Title 23, Code of Federal Regulations sets forth the Uniform System for Parking for Persons with Disabilities ("USPPD"). Section 1235.2(b) defines "persons with disabilities which limit or impair the ability to walk" as follows:

> Persons with disabilities which limit or impair the ability to walk means persons who, as determined by a licensed physician:

---

1. The regulations, 28 C.F.R., Pt. 35, App. A, provides that "a person who is blind is substan-

tially limited in the major life activity of seeing."

(1) Cannot walk two hundred feet without stopping to rest; or

(2) Cannot walk without the use of, or assistance from, a brace, cane, crutch, another person, prosthetic device, wheelchair, or other assistive device; or

(3) Are restricted by lung disease to such an extent that the person's forced (respiratory) expiratory volume for one second, when measured by spirometry, is less than one liter, or the arterial oxygen tension is less than sixty mm/hg of room air at rest; or

(4) Use portable oxygen; or

(5) Have a cardiac condition to the extent that the person's functional limitations are classified in severity as Class III or Class IV according to standards set by the American Heart Association;[2] or

(6) Are severely limited in their ability to walk due to an arthritic, neurological, or orthopedic condition.

This definition, which is also incorporated into a number of other states' parking placard statutes, has been found by other courts to encompass only individuals that met the ADA's definition of "individual with a disability." *See Jason v. Wisconsin Dept. of Transp.,* Slip Op. at 5–6 (holding that the impairments set forth in the regulation and incorporated into Wisconsin's disability parking placard statute substantially limit the life activity of walking and, therefore, anyone who satisfies the eligibility criteria under Wis. Stat. § 340.01(43g) is covered as an individual with a disability under the ADA, and every putative class member need not demonstrate that he or she is disabled under the ADA); *Thrope v. State of Ohio,* 19

F.Supp.2d 816, 825–26 (S.D.Ohio 1998)(finding that all persons falling within Ohio Rev. Code § 4503.44's definition of "persons with a disability that limits or impairs the ability to walk"[3] also fall within the ADA's definition of "persons with a disability").

In Connecticut, every parking placard purchaser must provide a statement signed by a licensed physician certifying that the individual meets the definition of "persons with disabilities which limit or impair the ability to walk," as set forth in 23 C.F.R. § 1235.2(b). Conn. Gen.Stat. § 14–253a(b). Defendant contends that because parking placards are equally available, "for example, to those who use an assistant device such as a cane, to those who do not require an assistant device, but whose physicians have opined that their mobility is substantially restricted," not all placard holders meet the ADA's definition of disabled. Defendant misreads the requirements of section 1235.2, which are incorporated into Connecticut's statute. Section 1235.2 limits the definition of "persons with disabilities which limit or impair the ability to walk" to, *inter alia,* persons who *cannot walk* without a brace, cane, crutch or other assistive device, 23 C.F.R. § 1235.2(b)(2), or who are *severely limited in their ability to walk* due to an arthritic, neurological or orthopedic condition, 23 C.F.R. § 1235.2(b)(6), or who *cannot walk 200 feet* without stopping to rest, 23 C.F.R. § 1235.2(b)(1). The regulations promulgated under the ADA state that an individual who, because of an impairment, can only walk *for very brief periods of time* would be substantially limited in the major life activity of walking. 29 C.F.R.App. § 1630.2(j) (emphasis added). Although there is nothing in the regulations that precisely equates "very brief periods of time"

**2.** The American Heart Association's Classification of Functional Capacity and Objective Assessment of Patients with Diseases of the Heart defines the functional capacity of Class III as "[p]atients with cardiac disease resulting in marked limitation of physical activity." They are comfortable at rest but less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain. Class III patients also show objective evidence of moderately severe cardiovascular disease. Class IV patients have cardiac disease "resulting in inability to carry on any physical activity without discomfort. Symptoms of heart failure or the anginal syndrome may be

present even at rest. If any physical activity is undertaken, discomfort is increased." These patients exhibit objective evidence of severe cardiovascular disease. A number of social security disability cases have held that persons with heart disease classified as group III or IV are considered disabled for purposes of the receipt social security disability benefits. *See, e.g., Jackson v. Schweiker,* 696 F.2d 630 (8th Cir.1983).

**3.** Ohio Rev.Code § 4503.44 incorporates the same definition as that contained in 23 C.F.R. § 1235.2(b).

with an ability to walk less than 200 feet, it is not unreasonable to infer that someone who could walk less than 200 feet could walk for only very brief periods of time and, thus, would be considered substantially limited in the major life activity of walking under the ADA regulations. Similarly, the ADA regulations state that an individual who uses artificial legs would be substantially limited in the major life activity of walking because that individual is unable to walk without the aid of prosthetic devices. *Id.* That regulation is akin to section 1235.2(b)(2), which defines "persons with disabilities which limit or impair the ability to walk" as including persons who cannot walk without an assistive device, including a brace, cane, prosthetic device, wheelchair or other assistive device. 23 C.F.R. § 1235.2(b)(2).

While the regulations promulgated under the ADA and the regulations incorporated into Conn. Gen.Stat. § 14–253a(b) do not track each other verbatim, the underlying premise of both is the same—a person must be substantially limited in the ability to walk.[4] While it is conceivable that there might be an individual who meets the requirements of section 1235.2(b) but does not meet the requirements of "disabled" under

the ADA, defendant has failed to cite to such an example. The Court agrees with the holdings of the other courts cited above that, as defined by 23 C.F.R. § 1235.2(b), an individual with a disability under Connecticut's parking placard statute would meet the requirements of "disabled" under the ADA. Therefore, the Court rejects this challenge to a finding of commonality.

Moreover, under the Connecticut statutory scheme, all of these conditions that limit or impair an individual's ability to walk must be determined and certified to by a licensed physician. (Indeed, it could be argued that once a physician has made this certification to the DMV, that individual would have a "record of such an impairment," so as to fall within the second prong of the definition of "disability" under the ADA. *See* 42 U.S.C. § 12102(2)(B).[5]) Because a determination as to disability has already been made prior to an individual's being granted the right to purchase a parking placard, the Court finds that a second judicial determination as to whether each placard holder is protected under the ADA is unnecessary to establish membership in the protected class. *See Jason v. Wisconsin Dept. of Transp.*, Slip Op. at 5–6 (holding that individual members of

---

4. Defendant cites to a number of ADA cases in which individuals were found not to be disabled under the ADA, but as to each, defendant *speculates* that he or she would be able to obtain a parking placard under Connecticut's standards. We disagree with defendant's speculative conclusion in each instance.

   *Kelly v. Drexel University*, 94 F.3d 102 (3d Cir.1996), involved an individual who admitted that he was able to walk, although he did not think that he could walk *more than a mile* or so, but who had a limp as a result of severe post-traumatic degenerative joint disease. The court found that these "comparatively moderate restrictions on the ability to walk" were not disabilities under the ADA. *Id.* at 106. Clearly, this individual would not meet the requirements of 23 C.F.R. § 1235.2(b), incorporated into Conn. Gen.Stat. § 14–253a(b).

   In *Stone v. Entergy Services, Inc.*, No. Civ. A. 94–2669, 1995 WL 368473, at *4 (E.D.La. June 20, 1995), based on the plaintiff's own testimony as well as an expert opinion, the court found that the plaintiff was not substantially limited in the major life activity of walking despite the residual effects of polio because, although he could not walk briskly, his ability to walk was not substantially or significantly restricted. Again, there is nothing in the facts of that case that would

indicate that this person could meet the requirements for obtaining a parking placard under Conn. Gen.Stat. § 14–253a(b).

   The third case cited by defendant in support of its assertion that individuals who are eligible for parking placards do not meet the ADA's definition of "disability" is *Nedder v. Rivier College*, 944 F.Supp. 111 (D.N.H.1996). In that case, the plaintiff could not walk more than *500 yards* due to her obesity. Although defendant suggests that the plaintiff would be able to obtain a parking placard in Connecticut, the facts in no way support this assumption. The regulations adopted by Connecticut specifically state that an individual will qualify for a parking placard only if he or she cannot walk *200 feet* without stopping. The plaintiff in the *Nedder* case could walk more than seven times this far. Thus, she should not qualify for a parking placard in Connecticut.

5. "Disability" is defined by the ADA as:

   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
   (B) a record of such an impairment; or
   (C) being regarded as having such an impairment.
   42 U.S.C. § 12102(2).

the class did not need to demonstrate that they were disabled under the ADA). Therefore, we reject defendant's argument that differences in disabilities among class members defeat the overriding commonality of the issues of law.

Having determined that the predominant question of the legality of the placard fee is common to all members of the class, we hold that the commonality requirement of Rule 23(a)(2) has been met. *See generally* 5 *Moore's Federal Practice 3d* § 23.23[5][f], [g] (noting that civil rights cases that challenge the conditions, policies, or practices that have an impact on all of the putative class members, as well as class actions that question whether government programs comply with the mandates of federal statutes or regulations, typically meet the commonality requirement).

### 3. Typicality

The third requirement that the representative party's claims must be typical of those of the class is intertwined with the issue of commonality. This requirement attempts to ensure that the representative party's interests are substantially aligned with those of the absent class members. 5 *Moore's Federal Practice 3d* § 23.24[1], [3].

Plaintiff asserts that her claims, as the representative party, are typical of the claims of the class at large because she satisfies the criteria for a parking placard under Conn. Gen.Stat. § 14–253a; she is a qualified person with a disability under the ADA; and she has been required by the DMV to pay money in order to receive a parking placard to use the parking spaces set aside for persons with disabilities.

Defendant concedes that there are additional persons who may allege the same ADA violations as the named plaintiff, and, therefore, defendant does not challenge the typicality of plaintiff's claim.

Plaintiff's claim arises from the same course of events as the other class members, and plaintiff will be making the same legal arguments to prove liability. *Robidoux*, 987 F.2d at 936 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 937. Moreover, a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality. *Trautz v. Weisman*, 846 F.Supp. 1160, 1167 (S.D.N.Y.1994).

In this case, plaintiff asserts the same claims on behalf of herself as those asserted on behalf of the class. Therefore, we hold that plaintiff has satisfied the typicality requirement of Rule 23(a)(3). *See generally* 5 *Moore's Federal Practice 3d* § 23.24[8][g] (noting that, in cases challenging governmental conduct, the typicality requirement is satisfied if the class representative is affected by the same statute or regulation as the putative class members).

### 4. Fair and Adequate Representation

■ The next requirement of Rule 23(a) is that plaintiff must fairly and adequately protect the interests of the class. The "adequacy of representation" requirement was designed to protect the due process rights of absent class members, since they will be bound by a judgment in the action. 5 *Moore's Federal Practice 3d* § 23.25[1]. Two criteria are generally employed for determining the adequacy of representation: whether the named plaintiff has any potential conflicts with the prospective class members, and whether the class counsel is qualified, experienced, and able to vigorously prosecute the interests of the class. 5 *Moore's Federal Practice 3d* § 23.25[3][a]; *In re Drexel Burnham*, 960 F.2d at 291; *Guckenberger*, 957 F.Supp. at 326. The first criterion overlaps with the requirement of typicality, which we found to have been met by the proposed class. Moreover, there is nothing in the record to suggest that the named plaintiff's interests conflict in any way with those of the putative class. As to the second criterion, plaintiff asserts that her counsel is competent to represent the interests of the entire class

and has provided lengthy affidavits concerning their legal experience. Defendant is willing to concede that "[a]bsent evidence to the contrary, each attorney acting as plaintiff's counsel is experienced and qualified to proceed as counsel." (Def.'s Mem. at 6.)

Defendant argues, however, that plaintiff's financial losses are incongruent with future placard purchasers' "theoretical" losses. We disagree with defendant that plaintiff's quantifiable losses, in contrast to future class members' unascertained losses, weigh against class certification. It is not at all uncommon for a class to include future members, who may generally avail themselves of the same relief available to class members who have already sustained damages. Moreover, the fact that the DMV discontinued charging fees for permanently disabled placards as of December 15, 1998, does not change this result. The proposed class only includes those who have paid or will be required to pay a fee for the parking placard. If no fee is charged to a particular person who receives a placard after December 15, 1998, that individual will not be included in the class.

Defendant also notes that plaintiff has not indicated whether costs are to be advanced by plaintiff herself or her counsel. The ability and willingness of the named plaintiff to finance a lawsuit are pertinent factors in the determination of whether the named plaintiff is an adequate representative of the class. If the lawsuit is not financed adequately, then it probably cannot be prosecuted vigorously. *Michaels v. Ambassador Group, Inc.,* 110 F.R.D. 84, 91 (E.D.N.Y.1986). Nevertheless, there is nothing in the record before us that would indicate an inability or unwillingness on the part of plaintiff or her counsel to advance the costs of this litigation. The mere failure to state who will be paying these costs does not defeat class certification under Rule 23(a).

Accordingly, we find that plaintiff and her counsel will fairly and adequately protect the interests of the class.

## B. Rule 23(b)

Having found that the four prerequisites of Rule 23(a) have been satisfied, we turn now to the question of whether the putative class falls within any one of the three categories of Rule 23(b). Plaintiff asserts that her proposed class meets the criteria of all three sections of Rule 23(b), but that subsection (2) is the most appropriate given the relief that the class members seek.

Rule 23(b)(2) is met where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiff argues that the DMV has acted on grounds generally applicable to the class as a whole by charging all class members for the handicapped parking placards and that Rule 23(b)(2) is the avenue specifically designed for cases such as this one, which seek declaratory and injunctive relief to rectify civil rights violations affecting a large and often unascertainable class of persons. Plaintiff states that the fact that the class also seeks reimbursement for past payments does not disturb this result, since the motivating force behind the lawsuit is to obtain injunctive relief and the monetary portion is simply to make the plaintiff class whole. We agree. *See Thrope,* 173 F.R.D. at 490–91; *Colorado Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354, 361 (D.Colo.1999).

Defendant responds that, because it is a state agency and the potential class is seeking declaratory and injunctive relief, this Court should determine whether class certification is "necessary" under Rule 23(b)(2). Defendant argues that the "necessity requirement" is based upon the premise that class certification is needless where any judgment would necessarily flow to all members of the proposed class and that, in this case, class certification is a mere "formality" since the benefits plaintiff seeks would flow to the class members regardless of certification. *See Dionne v. Bouley,* 757 F.2d 1344, 1356 (1st Cir.1985).

▮ Class actions under Rule 23(b)(2) are proper if injunctive or declaratory relief would be appropriate for the entire class. 5 *Moore's Federal Practice 3d* § 23.42[1][a]. Clearly, that requirement is satisfied in the

instant case since the challenged actions of the DMV affect the entire putative class. *See Id.* at § 23.43[2][a]. Moreover, this is not a case requiring relief specifically tailored to each individual class member. *See Id.* at § 23.43[2][b]. The only relief sought, other than injunctive and declaratory relief, is a refund of the $5.00 fees paid by the class members, and this relief is only incidental to the primary demand for injunctive and declaratory relief. *See Id.* at § 23.43[3][a]. Therefore, we find that the requirements for class certification have been met under subsection (b)(2). *See Thrope,* 173 F.R.D. at 490 (finding that certification under Rule 23(b)(2) was appropriate in a parking placard class action, where the plaintiff class sought a declaration that the fees charged violated the ADA and an injunction against future charges, as well as refunds of fees already paid).

■ As noted above, defendant maintains that a class action is not necessary in this case because as a governmental entity, it can be presumed that it will comply with an order entered in a single case. In other words, defendant argues, certification of a class is a mere formality. The rationale underlying the necessity doctrine is that a government entity may be trusted to comply with its legal obligations as to all persons once a judicial determination has been made that the entity's actions were unlawful as to one person. The necessity doctrine, however, does not apply to cases where there is a claim for monetary damages in addition to a request for injunctive and declaratory relief, as in the instant case. *See Copeland v. Perales,* 141 F.R.D. 11, 15–16 (E.D.N.Y. 1992).[6] Further, defendant in this case has contested the commonality of questions of fact and law presented by plaintiff's proposed class. In *Ashe v. Board of Elections of New York,* 124 F.R.D. 45, 51 (E.D.N.Y.1989), the court found that the lack of a concession by the defendant as to commonality and typicali-

ty of the class claims weighed against denial of class certification on the basis that it was a mere formality.

■ Moreover, whether to apply the necessity doctrine is a matter committed to the sound discretion of the district court. It is not a requirement of Rule 23. *Dionne v. Bouley,* 757 F.2d at 1356. In the instant case, because common issues of law and fact predominate and because the interests of the class members, as well as the interests of judicial economy, are best served by certification of a class action, the Court will not allow the necessity doctrine to preclude class certification. *See Ashe v. Board of Elections,* 124 F.R.D. at 51. Moreover, as pointed out by plaintiff, this Circuit has traditionally allowed class actions that seek to enjoin governmental action. *See, e.g., Brown v. Giuliani,* 158 F.R.D. 251, 269 (E.D.N.Y.1994)(collecting cases).

Additionally, it appears that the requirements for certification under Rule 23(b)(3) are met. Common issues involving the interpretation of the ADA predominate over any individual issues. Indeed, the only individual issue to be determined relates to money damages, *i.e.,* how many placards a class member purchased. *See Thrope,* 173 F.R.D. at 490. Moreover, a class action is the superior vehicle for managing a class of this size, particularly given the minimal monetary damages sought by each member of the class. *Id.*

■ Although we have found that the requirements of both Rule 23(b)(2) and (b)(3) have been met, we certify this action as a class action under Rule 23(b)(2). As set forth in the Advisory Committee Notes, Rule 23(b)(2) was specifically designed for cases seeking declaratory and injunctive relief. Illustrative are actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose

---

**6.** To the extent that defendant has asserted a defense to plaintiff's claims for reimbursement of the parking placard fees charged by the DMV, that defense is more appropriately considered when the merits of plaintiff's claims for money damages are reached, not in opposition to a motion for class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177, 94 S.Ct. 2140

(stating that there is nothing in Rule 23 that gives a court authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class); *Luyando v. Bowen,* 124 F.R.D. 52, 56 (S.D.N.Y.1989) (refusing to reach the question of sovereign immunity in a motion for class certification).

members are incapable of specific enumeration. Fed.R.Civ.P. 23(b)(2) advisory committee's notes (1966 amendment). *See 5 Moore's Federal Practice 3d* § 23.43[1][a] (noting that Rule 23(b)(2) was promulgated essentially as a tool for facilitating civil rights actions). Additionally, where a case might be certified under either Rule 23(b)(2) or (b)(3), a mandatory class under subsection (b)(2) is favored in order to provide the benefit of broader *res judicata* effect and to possibly avoid the costly notice requirements of subsection (b)(3).[7] *See McGarry,* Slip Op. at 3–4; *Colorado Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. at 361. Therefore, we grant class certification under Rule 23(b)(2) and turn now to the proper definition of the class.

## C. Is Class Membership Limited by the Statute of Limitations?

As proposed, the class would consist of all members who paid fees to the DMV for parking placards since January 26, 1992, the effective date of Title II of the ADA. Defendant asserts that Connecticut's one-year statute of limitations applicable to actions against the State, Conn. Gen.Stat. § 4–148,[8] precludes class membership for those persons who purchased their parking placards prior to August 26, 1995, which is one year prior to the filing of this action. Plaintiff responds that the statute of limitations issue should not be decided in certifying the class. Further, plaintiff asserts that no other court that has certified a plaintiff class in a parking placard case has so limited the class. However, should the Court consider the limitations issue, plaintiff argues that the statute was tolled by virtue of defendant's continuing violation of the ADA. Furthermore, plaintiff asserts that the appropriate statute of limitations is either the federal general four-year statute of limitations under 28 U.S.C. § 1658,[9] or the state three-year statute of limitations in Conn. Gen.Stat. § 52–577[10] applicable to tort actions.

■ Initially, we note that numerous courts have held that the presence of a statute of limitations defense to some of the class members' claims does not defeat certification. *In re Energy Sys. Equip. Leasing Secs. Litig.,* 642 F.Supp. 718, 752–53 (E.D.N.Y.1986); *Riordan v. Smith Barney,* 113 F.R.D. 60, 65 (N.D.Ill.1986); *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 699 (S.D.Fla.1992). Additionally, many courts have refused to decide the statute of limitations issue when ruling on a motion for class certification, preferring instead to wait until there is a determination of the merits. *See In re Energy Sys.,* 642 F.Supp. at 752; *Hoxworth v. Blinder Robinson & Co.,* 980 F.2d 912, 924 (3d Cir.1992); *CV Reit,* 144 F.R.D. at 697. In the instant case, however, the critical substantive issue has already been decided. There should be little dispute, if any, concerning when the claim of each individual class member arose. Moreover, ruling on the statute of limitations issue at this time should save the parties time and resources by eliminating those individuals from the defined class whose claims

---

7. Rule 23(b)(3) requires that class members be given the "best notice practicable including individual notice to all members who can be identified," which notice shall contain an "opt-out" provision. Fed.R.Civ.P. 23(c)(2). Moreover the judgment in a class action under subdivision (b)(2) includes all those whom the Court finds to be members of the class. A judgment in a class action under subdivision (b)(3) must include and specify those to whom the notice was provided and who did not request exclusion and whom the Court finds to be included in the class. Fed. R.Civ.P. 23(c)(3). Thus, the requirements under subdivision (b)(3) can be far more arduous than under (b)(2).

8. Conn. Gen.Stat. § 4–148(a) provides:

   (a) Except as provided in subsection (b) of this section, no claim shall be presented under this chapter but within one year after it ac-

crues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered, provided no claim shall be presented more than three years from the date of the act or event complained of.

9. 28 U.S.C. § 1658 states:

   Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.
   
   Section 1658 was enacted on December 1, 1990.

10. Conn. Gen.Stat. § 52–577 states:

   No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

are time-barred. *See Pavano v. Shalala*, 95 F.3d 147, 152 (2d Cir.1996). A class action cannot proceed on behalf of class members whose claims are time-barred. *See Schmidt v. Interstate Federal Savings & Loan Assn.*, 74 F.R.D. 423, 428 (D.D.C.1977). Therefore, while in other cases it may be appropriate to delay resolution of the statute of limitations issue until a decision on the merits, in this case, the interests of the parties and judicial economy are best served by resolving this issue at this time and defining the class accordingly.

▇▇▇ Initially, we hold that Conn. Gen. Stat. § 4–148 does not apply to the instant case because this is not a claim presented under Chapter 53 of the Connecticut Statutes. *See Guglielmoni v. Alexander*, 583 F.Supp. 821 (D.Conn.1984).

Like many of the federal civil rights statutes, the ADA does not contain its own statute of limitations. Although we have found no cases in this circuit directly addressing the appropriate statute of limitations to be applied in Title II cases under the ADA, this Circuit has uniformly applied Connecticut's three-year tort statute of limitations in other civil rights contexts. *See Lounsbury v. Jeffries*, 25 F.3d 131 (2nd Cir.1994) (applying Connecticut's three-year statute of limitations to a civil rights action under section 1983); *Williams v. Walsh*, 558 F.2d 667, 670 (2d Cir.1977)(applying § 52–577 in a civil rights case alleging deprivation of constitutional rights under 42 U.S.C. § 1983); *Wills v. Ferrandino*, 830 F.Supp. 116, 125 (D.Conn.1993)(applying § 52–577 to a civil rights action under section 1983, as well as to a section 504 claim under the Rehabilitation Act); *Wallace v. Stratford Bd. of Educ.*, 674 F.Supp. 67, 69 (D.Conn. 1986)(same); *see also Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993)(applying New York's three-year statute of limitations for personal injuries to a private action under section 504 of the Rehabilitation Act); *Morse v. University of Vermont*, 973 F.2d 122, 125–26 (2d Cir.1992)(analogizing section 504 claims to claims brought under section 1983 and holding that Vermont's general three-year statute of limitations for injuries to persons applied to section 504). Because causes of action under Title II of the ADA and section 504 of the Rehabilitation Act are essentially identical, we find that the same statute of limitations would apply to both. *See Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998). Therefore, we hold that Connecticut's three-year general tort statute of limitations would apply, Conn. Gen.Stat. § 52–577.

Plaintiff argues that we should apply the federal four-year limitations period set forth in 28 U.S.C. § 1658 to this action. Section 1658 was enacted on December 1, 1990, and sets forth a four-year limitations period for civil actions arising under federal statutes enacted after its effective date. Title II of the ADA became effective on January 26, 1992. Thus, arguably section 1658 might apply and one Circuit has suggested this possibility. *See Holmes v. Texas A & M Univ.*, 145 F.3d 681, 686 (5th Cir.1998). However, in light of the well-established precedent in this Circuit that has repeatedly upheld application of Connecticut's three-year statute of limitations to federal civil rights cases, we decline to do so.

▇▇▇ Notwithstanding that we find that a state statute of limitations applies to this federal claim, federal law governs the question of when a federal claim accrues. *Morse*, 973 F.2d at 125. Under federal law, a claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis for the action. *Id.* (citations omitted). Generally, the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory action or decision. *See O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985). In this case, the plaintiff class members' claims would have accrued on the date that they paid the fees for the parking placards. Thus, any claims for fees paid prior to August 26, 1993, would be time-barred.

▇▇▇ Plaintiff asserts, however, that the continuing violation theory applies to the claims in this action since they all arose out of a continuing course of conduct, which delays the commencement of the statute of

limitations period "until the last discriminatory act in furtherance of it." *See Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992). As the Second Circuit recently held, "[t]here is indeed a 'continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim when 'there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests.'" *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.1999)(quoting *Van Zant v. KLM Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996)). However, that exception does not apply to the facts of the instant case where, although there was a continuing policy of charging a fee that violated the ADA, each fee charged was a discrete act. Each time a fee was charged there was a separate violation of the ADA, which started the running of the statute of limitations as to that individual's claim. The continuing violation theory has been held not to apply to "completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). These are not acts of "continuing" nature. *Id.* Accordingly, we hold that the continuing violation theory does not apply to the facts of this case.

### Conclusion

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Class Certification is GRANTED. The plaintiff class is certified pursuant to Rule 23(b)(2). Plaintiff, Michele Duprey, is certified as the representative for the plaintiff class. The class will be defined as follows:

> All purchasers of windshield placards pursuant to Conn. Gen.Stat. § 14–253a, since August 29, 1993, and all persons who will in the future be required to pay money for windshield placards unless and until declaratory and injunctive relief protects against the requirement of payment as a condition of access to parking accommodations reserved for persons with disabilities. The class includes purchasers of all categories of additional and renewal placards, but does not encompass purchasers of temporary placards.

Because the Court has already ruled on the substantive issue of liability, the only remaining issues concern the relief sought by the plaintiff class. Within fourteen (14) days of the date of this Order, counsel for the parties are directed to confer and submit to the Court for approval a joint scheduling order addressing any remaining discovery that needs to be completed, notification of the class members, and a date after which this case will be ready for a final hearing.

SO ORDERED.

