JUSTICE LEAPHART
delivered the Opinion of the Court.
The United States District Court for the District of Montana, Billings Division, has certified the following question to this Court pursuant to Rule 44, M.R.App.P. We answer the certified question “no.”
The certified question is:
Section 33-23-203, MCA, prohibits the stacking of the uninsured motorist coverage available under a policy of motor vehicle liability insurance. Does Section 33-23-203, MCA, prohibit the stacking of the medical payment coverage and the underinsured motorist coverage available under a policy of motor vehicle liability insur *276 anee where a premium is charged for coverage of each motor vehicle listed within that policy?
In the insurance policy at issue, a premium is charged on each motor vehicle listed within the policy for medical payment coverage and a premium is charged on each motor vehicle listed within the policy for underinsurance coverage. The premium for the underinsured motorist coverage is included as part of the premium for the uninsured motorist coverage.
In its Order Certifying Question to the Supreme Court of Montana, the District Court submitted a statement of agreed facts. The facts that this Court finds dispositive of the question are as follows:
4. That, at approximately 0450 hours, on November 9, 1991, a vehicle insured by the Plaintiff under the policy issued to Wade and Diana Brown, namely a 1971 Ford pickup with VIN F10GKL66406, being driven by Lori Watson, in which Scott Hankel and Gary Lee Leonard were passengers, was involved in a one-vehicle accident in Jefferson County, Montana, on Interstate 90 at milepost 233.4, 15.6 miles west of Whitehall, Montana.
5. Subsequent thereto, at approximately 0510 hours, at [sic] 1983 Ford pickup truck, VIN 1FTHF26L5DPA15458, owned by Darrel M. Storey and driven by Darrel Maynard Storey, Jr., was traveling east on Interstate 90 when the driver lost control of the vehicle as he attempted to slow for the accident scene and went into a sideskid. The Storey vehicle struck the right rear comer of the trailer attached to the subject 1971 Ford pickup, VIN F10GKL66406. Such contact pushed the trailer into the ditch and onto its left side. The Storey vehicle then rapidly rotated. Mr. Leonard’s coat became entangled on the hitch of the Storey pickup which caused Mr. Leonard to be dragged under the Storey vehicle until after it went backwards into the ditch on the south side of the road. Mr. Leonard died as a result of the injuries sustained.
6. The Storey vehicle was insured by State Farm Auto Insurance Company under Policy No. 138 6224-405-226 and State Farm subsequently paid out its policy limits under the liability portion of its policy limits in the amount of $25,000.
7. Prior to signing a Release, the Estate of Gary Lee Leonard made demand upon Plaintiff for the uninsured (underinsured) motorist coverage and auto medical payment coverage provided for in the Business Auto Policy of Wade and Diana Brown.
*277 8. Plaintiff has refused to make any payments of uninsured (underinsured) motorist coverage and auto medical payment coverage to the heirs and/or Estate of Gary Lee Leonard, deceased.
Answering the question certified by the United States District Court requires this Court to construe § 33-23-203, MCA. In construing a statute, “the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. The rules of statutory construction require the language to be construed according to its plain meaning. Stratemeyer v. Lincoln County (1996), [276 Mont. 67], 915 P.2d 175, 178 (citing Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088). If the language is clear and unambiguous, then no further interpretation is required; we will resort to legislative history only if the intent cannot be determined from the plain wording of the statute. Clarke, 897 P.2d at 1088. Where the intention of the legislature can be determined from the plain meaning of the words used in a statute, the courts may not go further and apply other means of interpretation. Clarke, 897 P.2d at 1088 (citing Tongue River Elec. Coop. v. Montana Power Co. (1981), 195 Mont. 511, 515, 636 P.2d 862, 864).
The question certified is a narrow one. We are asked only to determine whether § 33-23-203, MCA, prohibits the stacking of “optional” coverages — here, the medical payments and underinsurance coverages. We do not consider whether the terms of the insurance contract prohibit stacking. Rather, our analysis is confined to an interpretation of § 33-23-203, MCA. Accordingly, this Court’s recent decision in Chilberg v. Rose (1995), 273 Mont. 414, 903 P.2d 1377, is not controlling in this case as Chilberg is a multiple policy case and does not interpret § 33-23-203, MCA. In addition, we note that Sayers v. Safeco Ins. Co. of America (1981), 192 Mont. 336, 628 P.2d 659, cited with approval in Chilberg, is contrary to § 33-23-203, MCA, as Sayers approved the stacking of uninsured motorist coverage under a single policy. Thus, under § 33-23-203, MCA, Sayers is no longer good law because under the terms of § 33-23-203, MCA, stacking of uninsured motorist coverage for multiple vehicles insured under a single policy is expressly prohibited unless the policy specifically provides otherwise. Section 33-23-203, MCA, provides:
(1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy, including the limits of liability under uninsured mo *278 torist coverage, must be determined as follows, regardless of the number of motor vehicles insured under the policy:
(a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident;
(b) if no motor vehicle insured under the policy is involved in the accident, the limit of insurance coverage available for any one accident is the highest limit of coverage specified for any one motor vehicle insured under the policy; and
(c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limit of insurance coverage available under the policy for any one accident.
(2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, or reductions of coverage which are designed to prevent duplicate payments for the same element of loss.
From the language of the statute, it is clear that “stacking” is not allowed “unless a motor vehicle liability policy specifically provides otherwise.” It is equally clear that the “anti-stacking” provisions of the statute apply to a “motor vehicle liability policy’ (MVLP). The term MVLP is defined in § 33-23-204(2), MCA, as “any policy of automobile or motor vehicle insurance against liability now or hereafter required under Title 61, chapter 6, parts 1 and 3.” (Emphasis added.)
The dissenters argue that § 33-23-204(2), MCA, refers to required “policies” rather than required “coverages.” It makes no sense, however, to discuss “policies” in a vacuum. Apolicy of insurance is nothing more than the coverages which are provided within the policy. In § 33-23-204(2), MCA, the legislature was obviously correlating the anti-stacking statutes with the fact that policies with specific types of coverage are required by Title 61, chapter 6, parts 1 and 3. In particular, the per person, per vehicle and property damage coverages mandated by § 61-6-103(2), MCA.
In interpreting § 33-23-204(2), MCA, three points are apparent; it is directed at insurance against liability. Secondly, it is directed at insurance coverage which is “required” by law; and finally, it is concerned with liability insurance which is not only required, but is required by both part 1 and part 3. There are only three variations of insurance coverage which meet the above criteria; that is, liability coverage which is required by both the MVSRA and the Motor Vehicle *279 Liability Act. Those three coverages are the per person, per vehicle and property damage coverages which are required by § 61-6-103(2), MCA, and which are incorporated into the Motor Vehicle Liability Act by § 61-6-301, MCA. Unlike the third-party coverage mandated by MVSRA and the Motor Vehicle Liability Act, underinsurance and medical payment do not qualify as insurance against liability. Rather, underinsurance and medical pay coverage are designed to protect the first party insured. Furthermore, there is nothing in MVSRA, the Motor Vehicle Liability Act or Title 33, chapter 23, MCA, which would “require” underinsurance and medical pay coverage. To the contrary, the MVSRA specifically excludes coverages which are in excess of the required per person, per vehicle and property damage coverage.
The MVSRA, § 61-6-103(8), provides as follows:
Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and the excess or additional coverage is not subject to the provisions of this part. With respect to a policy which grants the excess or additional coverage, the term “motor vehicle liability policy” applies only to that part of the coverage which is required by this section.
As Justice Erdmann’s dissent points out, the above provision specifically refers to coverage which is required “by this section.” Although “this section” refers to the MVSRA, the Motor Vehicle Liability Act has also incorporated those same “coverage” requirements; $25,000 because of bodily injury to any one person, $50,000 for bodily injury in any one accident, and $10,000 for property damage. There is nothing in the Motor Vehicle Liability Act which would suggest that the liability coverage requirements incorporated from MVSRA are any broader than those required under MVSRA. Since MVSRA specifically does not require any excess or additional coverage such as underinsurance, it is reasonable to conclude that the Motor Vehicle Liability Act likewise treats medical pay coverage and underinsurance as in “excess” or in addition to the coverages which are specifically required by both Acts in question. Title 61, chapter 6, parts 1 and 3.
As medical payment coverage and underinsured motorist coverage .are “excess or additional coverage” which are not required under either the MVSRA or the Motor Vehicle Liability Act, we determine that these coverages are not part of the MVLP under § 33-23-204(2), MCA. Accordingly, the prohibition against stacking required cover *280 ages in § 33-23-203, MCA, does not apply to underinsurance and medical payment coverage.
This Court has recognized that “Montana has no statutory insurance requirement concerning underinsured motorists.” Grier v. Nationwide Mut. Ins. Co. (1991), 248 Mont. 457, 458-59, 812 P.2d 347, 349. While coverage in excess of the minimum amounts mandated by § 61-6-103(2), MCA, and additional coverages such as comprehensive, underinsured, medical payments, or towing may be purchased by the insured, the mandate of Title 61, chapter 6, part 1, MCA, and the term MVLP apply only to the third-party liability coverage required by § 61-6-103(2)(b), MCA.
Section 33-23-201, MCA, requires that the insurer offer first-party, uninsured motorist coverage in the same amounts as required for third-party coverage under § 61-6-103, MCA. The distinction between the uninsured motorist coverage and the third-party coverage is that by rejecting the uninsured coverage the insured may waive the first-party uninsured coverage benefitting himself, but he cannot waive the minimum liability coverages benefitting the third-party. Importantly, however, in the absence of the insured affirmatively rejecting the coverage, the policy is issued with the 'uninsured motorist coverage. Accordingly, under Montana’s statutory scheme the minimum third-party liability coverages under § 61-6-103(2)(b), MCA, and the minimum first-party, uninsured motorist coverage under § 33-23-201, MCA, are required coverages.
Section 33-23-203, MCA, initially references the MVLP and coverage available under such a MVLP policy and continues: “including the limits of liability under uninsured motorist coverage.” This latter inclusion of uninsured motorist coverage was necessary because uninsured motorist coverage is not required as part of the MVLP. Uninsured motorist coverage is, nonetheless, a coverage which is required by § 33-23-201, MCA, subject to rejection by the insured. Accordingly, we determine that the “anti-stacking” provision of § 33-23-203, MCA, applies only to those coverages required under the MVLP or § 33-23-201, MCA.
Farmers Alliance argues that the “available coverage” language in § 33-23-203, MCA, is broader than the required coverages and that the statute includes underinsurance coverage. We reject this argument. The only insurance coverage available under both part 1 and part 3, as the MVLP has been restrictively defined by the legislature, is the minimum third-party coverage required by § 61-6-103(2)(b), MCA. This definition of “available coverage” follows because the term *281 MVLP does not encompass any other “excess” or additional coverage. Section 61-6-103(8), MCA. The limits of coverage available under any such policy must refer to the required third-party minimum coverages, required under both parts 1 and 3 of Title 61, chapter 6. Furthermore, “uninsured motor vehicle” is defined in § 33-23-201, MCA, which provides that “[a]n uninsured motor vehicle is a land motor vehicle, the ownership, the maintenance, or the use of which is not insured or bonded for bodily injury liability at the time of the accident.” This definition does not include “underinsured motor vehicle” within its terms.
Although Farmers Alliance asserts that this Court’s opinion in Grier holds that underinsured coverage is part of the uninsured motor vehicle coverage, we determine that Grier is distinguishable. Our holdings in Grier were based upon an interpretation of the policy language and are not controlling as a matter of statutory construction. In Grier, we stated that “under these circumstances, the “under-insured” coverage is part of the uninsured motor vehicle coverage.” Our holding, however, was prefaced with the caveat “under these circumstances.” We recognized that the “unique fashion” of the Grier policy was determinative. We noted that “the insurance policy in this case [Grier] is set up in a unique fashion ... the “underinsured” motorist provision is part of the section on uninsured motorist coverage ... there is no separate policy section providing for underinsured motor vehicle coverage.” Grier, 812 P.2d at 349. In addition, we noted that “the declarations page makes no mention whatsoever of under-insured motor vehicle coverage.” Grier 812 P.2d at 349. Most importantly, we were interpreting the language of the Grier policy — not the statute. Here, however, our conclusion is based on § 33-23-203, MCA. Further, unlike the policy at issue in Grier, the instant policy sets forth the underinsurance coverage on the declarations page. We determine that Grier is not determinative on this issue as it interpreted the insurance contract, not § 33-23-203, MCA.
The legislature has mandated that motor vehicle liability policies provide two types of coverage: coverage for injury to third-parties, Title 61, chapter 6, parts 1 and 3, and first party coverage for uninsured motorists, § 33-23-201, MCA. Likewise, the legislature has provided that, absent contractual language to the contrary, such required coverages cannot be “stacked” when numerous vehicles are insured under one policy. Section 33-23-203, MCA. The question of whether excess or additional coverages, such as underinsurance coverage, can be stacked was left as a matter of policy interpretation.
*282 Accordingly, we answer the certified question in the negative. Section 33-23-203, MCA, does notprohibit the stacking of the medical payment coverage and the imderinsured motorist coverage available under a policy of motor vehicle liability insurance where a premium is charged for coverage of each motor vehicle listed within that policy.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON, HUNT and TRIEWEILER concur.