**Michael L. BURTON, Plaintiff,**

v.

**MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE CO., a corporation, Defendant.**

**No. CV–00–95–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

March 31, 2003.

---

Alan J. Lerner, Law Offices of Alan J. Lerner, Dale L. McGarvey, Heberling, Sullivan & McGarvey, Kalispell, MT, for plaintiff.

Randall G. Nelson, Nelson Law Firm, Billings, MT, for defendant.

## ORDER

DONALD W. MOLLOY, Chief Judge.

### I. Background

On October 12, 1993, Plaintiff Michael Burton was injured while a passenger in the back seat of a car driven by Bonnie Truscott. Truscott, a Mountain West insured, was killed. Burton incurred $56,211.97 in medical expenses as a result of his injuries.

At the time of the wreck, Truscott held one insurance policy with Mountain West. The policy covered four vehicles. Truscott paid separate premiums for each vehicle. Each premium included $5,000 in medical payments ("med-pay") coverage for insureds. Under the policy's definition, an "insured" included a person who was a passenger in a covered vehicle. Mountain West paid Burton

$5,000, representing the med-pay limits under the policy for the car in which he was riding. Mountain West did not "stack" the med-pay benefits from the three other vehicles insured under the policy.[1]

On June 18, 1998, the Montana Supreme Court decided *Farmers Alliance Mutual Insurance Co. v. Holeman*, 289 Mont. 312, 961 P.2d 114 (1998) (hereinafter *"Holeman II"*). In that case, the court determined that Montana public policy requires insurers to stack underinsured motorist and med-pay coverages when medical expenses exceed the limits of a single coverage and multiple vehicles are insured under one policy with separate premiums paid for each vehicle.

On June 7, 2000, Burton filed suit against Mountain West asserting both first– and third-party claims. The parties agree that Burton was a first-party insured as to the med-pay coverage. As first-party claims, Burton alleges that Mountain West violated the Unfair Trade Practices Act (the "UTPA") by failing to inform him that med-pay limits on multiple cars were stackable. Burton also alleges that he is a member of a class that is constituted around Mountain West's duty to render to class members full payment of all stackable coverages. Counts One, Two, Four A, Four B,[2] and Five contain first-party claims under the UTPA arising from Burton's status as an insured. Count Six requests disgorgement of all profits and worth gained as a result of Mountain West's unfair trade practices, payment of all individuals aggrieved by those practices, and the establishment of a cy pres trust for the remainder of the undisbursed profits and worth.

As a third-party claimant, Burton alleges that Mountain West failed to fairly investigate and promptly settle his claim, and that it engaged in leveraging by requiring him to agree that the stacked medical payments would constitute an advance against any future recovery. Count Three is a common law claim arising from Burton's status as a claimant injured by Truscott.

Now pending before the Court are multiple motions filed by both parties, including

(1) Plaintiff's motion to allow Patricia Jangula to intervene as a class representative;

(2) Defendant's motion for summary judgment on Jangula's claims;

(3) Plaintiff's motion for partial summary judgment re leveraging;

(4) Defendant's motion for partial summary judgment re reasonable basis to request offset for medical payments;

(5) Defendant's motion for partial summary judgment re reasonable basis in law to enforce non-stacking provisions of policy;

(6) Plaintiff's motion for class certification;

(7) Defendant's motion for partial summary judgment re retrospective application of *Holeman II*;

(8) Defendant's motion to bifurcate claims;

(9) Plaintiff's motion to file amended complaint; and

(10) Plaintiff's motion to compel Defendant to produce documents for in camera review.

Whether Defendant had a reasonable basis for refusing to stack med-pay benefits is a threshold issue, the decision of which drives the rulings on the other motions. Accordingly, this issue will be dealt with first.

## II. Analysis

### A. Reasonable Basis for Refusing to Stack

Mountain West argues that, before *Holeman II* was decided, it could reasonably rely on the anti-stacking provisions in Truscott's policy because multiple vehicles were covered under one policy but separate premiums were paid for each vehicle. Mountain West relies on Mont.Code Ann. § 33–23–203.

### 1. Propriety of Summary Judgment

■ As a preliminary matter, the Court must determine who decides whether Moun-

---

1. Burton did not demand stacked med-pay benefits until after *Holeman II* was decided. In response to this demand, on February 9, 2000, Mountain West paid Burton an additional $15,000 in med-pay benefits. A short time later, Mountain West paid Burton $2,654.79 in interest dating from the date of decision in *Holeman II*.

Burton maintains that Mountain West owes additional interest on the $15,000 at 10% per annum dating from 90 days after the date of the accident.

2. There are two Counts labeled "Four."

tain West had a reasonable basis for refusing to stack med-pay benefits. Burton, relying on *Dean v. Austin Mutual Insurance Co.,* 263 Mont. 386, 869 P.2d 256 (Mont.1994), argues that reasonableness is a factual inquiry and should be left to the jury to decide after weighing the evidence and judging the credibility of the witnesses. Burton wants to present the history of Montana law to the jury and let the jurors decide whether Mountain West's refusal to stack coverages was reasonable. Mountain West argues that the Court may decide whether an insurer's defense is reasonable as a matter of law, as the Montana Supreme Court did in *Watters v. Guaranty National Insurance Co.*[3]

Mountain West has the better argument. While reasonableness is generally a fact question, the Montana Supreme Court has recognized that in the context of a reasonable basis in law or fact defense under the UTPA, a court can determine reasonableness at the summary judgment stage when no facts are disputed and the underlying basis of law is grounded in a legal conclusion. *Watters v. Guaranty National Insurance Co.,* 300 Mont. 91, 112, 3 P.3d 626, 639 (2000).

Burton's reliance on *Dean v. Austin Mutual Insurance Co.* is misplaced. Unlike this case, *Dean* involved disputed issues of fact. Specifically, the insurer initially denied the plaintiffs' claims because they were charged with arson, yet the insurer had no evidence that plaintiffs were involved in setting the fire. 263 Mont. 386, 388, 869 P.2d 256, 257

(1994). The Montana Supreme Court held that whether filing of criminal charges alone amounted to a reasonable basis in law or in fact for denying the plaintiffs' claim was a fact question. *Id.* at 388, 869 P.2d at 258. Additionally, the Montana Supreme Court has distinguished *Dean* from situations where the basis for denying a claim is a legal conclusion and no factual issues are in dispute. *See Watters,* 300 Mont. at 112, 3 P.3d at 639.[4]

In *Watters,* the Montana Supreme Court directed the district court to enter judgment in favor of the insurer on one count because the insurer had a reasonable basis in law to deny coverage. In distinguishing *Dean,* the court stated that

the 'trier of fact' rule set forth in *Dean* is not necessary in a summary judgment proceeding where the underlying 'basis in law' is grounded on a *legal conclusion,* and no issues of fact remain in dispute. Here, therefore, it is for the court, not the trier of fact, to determine whether our holding in *Juedemann* [*Juedeman v. National Farmers Union Property and Cas. Co.,* 253 Mont. 278, 833 P.2d 191 (1992)] sufficiently provides an absolute defense as a matter of law in this instance.

*Watters,* 300 Mont. at 112, 3 P.3d at 639 (*emphasis* added).

Just as in *Watters,* the "legal conclusion" here concerns the reasonableness of Mountain West's reading of Montana law. There are no facts in dispute relative to this issue. Thus, this is a question of law for the Court to decide.[5]

---

**3.** Mountain West also cites *Franceschi v. American Motorists Ins. Co.,* 852 F.2d 1217 (9th Cir. 1988), and *Safeco Ins. Co. v. Guyton,* 692 F.2d 551 (9th Cir.1982), in its support. *See* Def. Br. at 11. Possibly this is intended as an alternative argument to Mountain West's reliance on *Watters.* Apparently, the argument is that summary judgment is sought under a federal procedural rule, so federal standards should apply. However, *Franceschi* and *Guyton* were decided under California law. There is no escaping the fact that the Court must consult Montana law to decide the issue. The motion does not present a purely procedural question.

**4.** Burton's insistence that *Watters* permits a court to decide the reasonableness of a legal position only when there is clear authority on point is unpersuasive. The *Watters* court did not qualify its authority to decide the issue. *See* 300 Mont.

at 111–12, 3 P.3d at 639. Burton's protestation goes to the merits of Mountain West's position, not to the Court's authority to consider its position.

**5.** Notwithstanding the talismanic force of the word "reasonable," in determining whether Mountain West had a reasonable basis in law for refusing to stack med-pay benefits, the Court is doing nothing different than it does in deciding whether an administrative agency's interpretation of a statute is "reasonable," *cf. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), or whether a constitutional right was "clearly established" at the time of an alleged civil rights violation, *cf. Hanlon v. Berger,* 526 U.S. 808, 810, 119 S.Ct. 1706, 143 L.Ed.2d 978 (1999) (per curiam).

## 2. History of Montana Stacking Law

Mountain West asserts that before *Holeman II*, a reasonable basis in law existed to enforce non-stacking provisions in single policies that charged separate premiums for multiple vehicles.[6] A determination whether Mountain West had a reasonable basis in law for refusing to stack claims requires an analysis of Montana stacking law.

In 1979, the Montana Supreme Court determined that uninsured motorist coverage must be stacked when a policy covers more than one vehicle and a separate premium was paid for each vehicle. *Kemp v. Allstate Insurance Co.*, 183 Mont. 526, 534, 601 P.2d 20, 24 (1979). In *Sayers v. Safeco Insurance Company of America*, the Montana Supreme Court extended *Kemp's* application to include people who qualified as insureds under a policy's definition, but who had not paid the premiums. 192 Mont. 336, 340, 628 P.2d 659, 662 (1981)(finding "no reason to distinguish between persons insured and policyholders who have actually paid premiums").

In 1981, the Montana Legislature enacted Mont.Code Ann. § 33-23-203 which ostensibly prohibited stacking. As enacted, § 33-23-203 read:

(1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy ... must be determined as follows, regardless of the number of motor vehicles insured under the policy:

 (a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident,

 . . .

 (c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limits of insurance cover-

age available under the policy for nay one accident.

(2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, or reductions of coverage which are designed to prevent duplicate payments for the same element of loss.

Mont.Code Ann. § 33-23-203 (1981).

Since its enactment, § 33-23-203 has been the subject of much litigation, eventually resulting in a 1997 amendment that may effectively prohibit stacking. *See Christensen v. Mountain West Farm Bureau Mutual Insurance Co.*, 303 Mont. 493, 504-05, 22 P.3d 624, 630 (2000).[7] The Montana Supreme Court has considered numerous factual scenarios in which insurance companies, relying on the statute and provisions within insurance contracts, have refused to stack coverages.

For example, the court has determined that an insurer cannot preclude a named insured with two separate policies from stacking underinsured coverage. *Bennett v. State Farm Mutual Automobile Insurance Co.*, 261 Mont. 386, 862 P.2d 1146 (1993). In *Bennett*, the plaintiff was hit by a car while walking across a street. Bennett was an insured under two separate policies, each covering a different vehicle.[8] Each policy provided underinsured coverage for injuries sustained by a pedestrian and each policy contained an anti-stacking clause. *Id.* at 388, 862 P.2d at 1147-48.

The court noted the public policy enunciated in previous decisions that "an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration." *Id.* at 389, 862 P.2d at 1148. State Farm had argued that the public policy applied only to coverages Montana law required in-

---

**6.** Mountain West notes that its motion is for partial summary judgment and relates to the legal issue only. Mountain West does not seek summary judgment on whether it had a reasonable basis in fact for denying the claim, though this seems to be a distinction without a difference because the sole reason asserted for denying the stacking claim was the anti-stacking provision in the policy. Further, Mountain West notes that its reasonable basis in law defense applies to the statutory bad faith claims under

the UTPA, but does not apply to the claims for breach of contract or whether Mountain West is required to open closed claims that were not stacked.

**7.** Cases challenging the validity of § 33-23-203 on public policy grounds are before the Montana Supreme Court.

**8.** One policy was in the plaintiff's name, while the other was in her husband's name.

surers to offer. The court rejected this argument, finding that whether the coverage was required by statute was "irrelevant." *Id.* Ultimately, the court determined that underinsured coverage did not depend on an insured's occupancy of a vehicle and was personal to the insured. Therefore, Bennett could reasonably expect to recover under both policies because she was an insured under each policy and separate premiums had been paid for each policy. *Id.* at 389–90, 862 P.2d at 1148–49.

In 1995, the court refused to require stacking of uninsured motorist coverage in multiple policies where a passenger qualified as an insured under a policy based solely on his occupancy of a vehicle. *Chilberg v. Rose,* 273 Mont. 414, 903 P.2d 1377 (1995). The court noted that because the passenger's status as an insured depended on his occupying the vehicle, the coverage was not personal to the insured. Since the passenger did not occupy the other vehicles owned by the named insured, and because the named insured's other cars were insured under separate policies, the passenger did not have a reasonable expectation of coverage under the policies of vehicles he was not occupying. *Id.* at 418–19, 903 P.2d at 1380.

In its opinion, the Montana Supreme Court distinguished its decisions in *Kemp, Sayers,* and *Bennett.* In those cases, the injured parties qualified as insureds under each policy that was subject to stacking. *Id.* at 417, 903 P.2d at 1379. Contrarily, Chilberg qualified as an insured under only one of the named insured's three separate policies. Because Chilberg did not qualify as an insured under each of the policies, the public policy asserted in *Bennett* did not apply, Chilberg did not have a reasonable expectation of coverage, and he could not claim that the insurer was defeating coverage which he had a reasonable expectation to receive.

Next in line was *Farmers Alliance Mutual Insurance Co. v. Holeman* (hereinafter "*Holeman I*"). In *Holeman I,* the Montana Supreme Court addressed the narrow issue of whether Mont.Code Ann. § 33–23–203 prohibited "the stacking of the medical pay-

ment coverage and the underinsured motorist coverage available under a policy of motor vehicle liability insurance where a premium is charged for coverage of each motor vehicle listed within that policy." 278 Mont. 274, 275–76, 924 P.2d 1315, 1316 (1996). The court held that § 33–23–203 applied only to mandatory coverages, or those an insurer was required to offer, and did not prohibit stacking of "optional" coverages such as underinsured motorist and med-pay coverages when a separate premium is charged for each vehicle insured under the policy. *Id.* at 281–82, 924 P.2d at 1320.

In its opinion, the court made some observations relevant to Burton's claims. First, the court considered only whether the *statute* prohibited stacking of optional coverages; it did not consider whether the *terms of the insurance contract* prohibited stacking. *Id.* at 277, 924 P.2d at 1317. Likewise, the court noted that *Sayers* was no longer good law because it allowed stacking of uninsured motorist coverage under a single policy, a practice that § 33–23–203 "expressly prohibited unless the policy specifically provides otherwise." *Id.*[9]

The next case in Montana's stacking jurisprudence was *Ruckdaschel v. State Farm Mutual Automobile Insurance Co.* There, the Montana Supreme Court addressed whether anti-stacking language as applied to med-pay coverage violated Montana public policy when the injured person was a named insured with multiple policies on multiple vehicles for which she paid separate premiums. 285 Mont. 395, 398, 948 P.2d 700, 702 (1997). The plaintiff in *Ruckdaschel* was injured when she was struck as a pedestrian by a vehicle. At the time of the incident, the plaintiff had three policies in effect that could have provided med-pay benefits. However, each policy contained an anti-stacking provision that limited payment to the highest limit of liability among the three. The plaintiff demanded that State Farm pay the limits for medical coverage on each policy, but it refused. *Id.* at 397, 948 P.2d at 701–02.

9. Later, the Montana Supreme Court noted that this language was dictum and was not meant to suggest that § 33–23–203 abrogated *Sayers* by completely prohibiting stacking. *Dakota Fire In-* *surance Co. v. Oie,* 291 Mont. 486, 496–97, 968 P.2d 1126, 1133 (1998). However, *Dakota Fire* was decided after *Holeman II.*

The court held that the insurance contract's anti-stacking provision violated Montana public policy. The court reiterated that Montana public policy prohibits an insurer from "plac[ing] in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration." *Id.* at 399, 948 P.2d at 703. Because the plaintiff paid separate premiums for three policies, each with med-pay coverage, she was entitled to stack the payments.

■ Next, the Montana Supreme Court visited the issue it left undetermined in *Holeman I. Farmers Alliance Mutual Insurance Co. v. Holeman*, 289 Mont. 312, 961 P.2d 114 (1998) (hereinafter *"Holeman II"*). In *Holeman II*, the court determined that underinsured motorist and med-pay coverages could be stacked, despite policy language to the contrary, when multiple vehicles are insured under one policy and a separate premium is charged for each vehicle. *Id.* at 329, 961 P.2d at 124–25. The court held that policy provisions to the contrary are against public policy and that Farmers Alliance could not rely on such a provision to deny coverage after receiving separate premiums for each vehicle. *Id.* at 329, 961 P.2d at 124.

In its opinion, the *Holeman II* court recognized the dichotomy presented by its decisions in *Bennett* and *Chilberg*. Though it found the reasoning in *Bennett* more persuasive, the court recognized the case was "arguably distinguishable." *Id.* at 326, 961 P.2d at 123. Ultimately, the court decided that "overriding public policy considerations ... mandate[d] that Holeman be permitted to stack" the underinsured motorist and med-pay coverages. *Id.* at 327, 961 P.2d at 123. In reaching that conclusion, however, the court recognized that it was "arguable that Leonard may have had no reasonable expectation of expanded coverage because he did not purchase the policy at issue, but instead qualified as an insured by virtue of his occupancy in an insured vehicle." *Id.*[10]

### 3. Application to Burton's Claims

■ Though dicta, the above-cited language from *Holeman II* supports Mountain West's argument and tips the balance in its favor. Burton's situation is nearly identical to that presented in *Holeman II:* Burton was injured in an accident as a passenger in the vehicle; he was not a named insured, but qualified as an insured due to his status as a passenger in an insured vehicle; the named insured had a single policy with Mountain West under which she paid separate premiums for four vehicles; each vehicle had med-pay coverage with a limit of $5,000; and, Mountain West paid Burton $5,000 in med-pay under one vehicle's coverage, but refused to stack the medical payments from each vehicle.

*Holeman II* established with certainty that Mountain West was required to stack the medical payments made to Burton, a point Mountain West does not dispute. The issue, however, is whether Mountain West's refusal to stack med-pay benefits before the *Holeman II* decision was wholly unreasonable. *Palmer v. Farmers Insurance Exchange,* 261 Mont. 91, 102, 861 P.2d 895, 902 (1993)("[i]t is generally held that an insurer is entitled to challenge a claim based on the basis of debatable law or facts and will not be liable for bad faith or punitive damages for denying coverage if its position is not wholly unreasonable") (citations omitted). Given the status of the law as discussed above, the answer is no.[11]

Burton argues that since at least 1993 "it has been reasonably clear that where an insured has paid a premium for coverage, an insurer may not deny the same by denying stacking, as to policies issued prior to May 2, 1997." Burton, citing *Kemp* and *Grier v. Nationwide Mut. Insurance Co.,* 248 Mont. 457, 812 P.2d 347 (1991), argues that for "many years," policy provisions prohibiting stacking of uninsured motorist coverage have

---

10. In making this concession, the court noted that its holding in *Chilberg* provided such an argument. Ultimately, however, the court distinguished *Chilberg*, noting that while it determined the plaintiff had no reasonable expectation of coverage, the primary reason the court did not allow Chilberg to stack coverages was because he did not qualify as an insured under the named

insured's two other policies. *Id.* at 326, 961 P.2d at 123.

11. As will be discussed *infra,* that Mountain West had a reasonable basis for refusing to stack benefits does not mean it is not liable for contract damages for failing to pay stacked med-pay benefits.

been void as contrary to public policy. Burton continues that in *Bennett* the Montana Supreme Court extended this public policy prohibition to include med-pay coverage, making it clear to all insurers that they could not preclude an insured from stacking coverages where multiple premiums were paid.

Burton's argument relies on a general policy statement and ignores the unique factual circumstances of each stacking case. It is true that the Montana Supreme Court has often noted Montana's long-standing public policy against insurers using policy language to defeat coverage for which the insured has paid premiums. *See e.g., Bennett,* 261 Mont. at 388, 862 P.2d at 1148 ("This court has consistently invalidated insurance contract clauses that limit the insurer's liability or *uninsured* motorist coverage") (emphasis in original); *Ruckdaschel,* 285 Mont. at 398, 948 P.2d at 702 ("this Court has consistently upheld and relied upon this public policy for the past twenty-five years"). However, the factual differences in *Bennett, Holeman I, Holeman II,* and *Ruckdaschel* left Mountain West with an argument against stacking that was supported by law and was not wholly unreasonable. This allowed it to refuse to stack without acting in bad faith.

The policy upon which Burton relies is a general public policy affecting insurers. However, the language of a general public policy does not necessarily make it clear how the policy will be applied to any particular set of facts. Given the facts here, and the status of the law, it was at least reasonably debatable whether Mountain West was required to stack Burton's med-pay benefits. Because there was a reasonably debatable difference in the law, Mountain West's actions could not be wholly unreasonable.

Additionally, not only was there some debatability about the application of case law, there was also a statute on the books that prohibited stacking and had not been invalidated as applied to Burton. Mountain West's arguments, like those of Farmers Mutual in *Holeman II,* were "arguably distinguishable" from those of insurers in previous cases where the court found benefits should have been stacked. This, coupled with the statute prohibiting stacking, means Mountain West's refusal to stack med-pay benefits before *Holeman II* was not wholly unreasonable and cannot for the basis for bad faith or punitive damages. Thus, it was not unreasonable for Mountain West to argue a distinction in Montana law when the Montana Supreme Court itself essentially recognized that Farmers Alliance's argument in *Holeman II* was reasonable. That the court ultimately decided against Farmers Alliance and clarified the law does not retroactively make Mountain West's position unreasonable.

Because Burton's situation is nearly identical to that of the plaintiff in *Holeman II,* it follows that Mountain West's refusal to stack Burton's medical benefits before the decision in *Holeman II* was not unreasonable. However, that Mountain West's position was not unreasonable is not the panacea Mountain West would like to make it. Taking a position that is not unreasonable insulates Mountain West from bad faith and punitive damages for its refusal to stack medical payments before *Holeman II* was decided. However, this does not mean it gets to keep the money paid in premiums it should have paid out as benefits.

## B. Retroactive Application of *Holeman II*

▮ Before applying a rule prospectively only rather than retroactively, a court must consider:

(1) whether the ruling to be applied establishes a new principle of law "by overruling precedent or by deciding an issue of first impression whose result was not clearly foreshadowed;"

(2) whether retroactive application "will further or retard [the rule's] application;" or

(3) the equity of retroactive application.

*Benson v. Heritage Inn, Inc.,* 292 Mont. 268, 275, 971 P.2d 1227, 1232 (1998) (quoting *Riley v. Warm Springs State Hospital,* 229 Mont. 518, 521, 748 P.2d 455, 457 (1987)). Generally, if any one of the above factors is present, a rule of law will not be applied retroactively. *Poppleton v. Rollins, Inc.,* 226 Mont. 267, 271, 735 P.2d 286, 289 (1987). A person seeking a determination of prospective application must prove by a preponderance of evidence that retroactive application will have "substantial inequitable results."

*LaRoque v. State of Montana,* 178 Mont. 315, 320, 583 P.2d 1059, 1062 (1978).

Mountain West argues that *Holeman II* decided an issue of first impression. Burton counters that *Holeman II* did not overrule any clearly established precedent and, even if it decided an issue of first impression, its result was clearly foreshadowed by decisions in prior cases.[12]

*Holeman II* did not overrule any precedential case law, nor did it decide an issue of first impression. Rather, *Holeman II* dealt with a nuance in the law based on the particular facts of coverage. The specific application of coverage in *Holeman II* had not been dealt with before. Though, as noted above, this means Mountain West's position was not wholly unreasonable for purposes of bad faith and punitive damages liability, it does not necessarily follow that *Holeman II's* result was not clearly foreshadowed. While *Holeman II* presented different fact issues, all previous stacking cases, except *Chilberg,* sided with insureds and found that insurers could not prohibit stacking. Mountain West was entitled to make an argument against stacking that was not wholly unreasonable, however, it is not insulated from retroactive application of *Holeman II.*

Likewise, *Benson's* second and third factors also favor retroactive application. The policy behind allowing stacking is that an insurer should not be able to place a provision in a policy that defeats coverage for which the insured has paid valuable consideration. *Holeman II,* 289 Mont. at 326, 961 P.2d at 123. Here, Mountain West profited by charging premiums for coverage it would not pay. Applying *Holeman II* retroactively puts Mountain West in the same position it would have been in had it paid stacked benefits in the first place.

The equity of retroactive application is a closer call. Applying *Holeman II* retroactively would require Mountain West to pay past-due benefits. However, because the Court has determined Mountain West had a reasonable basis in law for refusing to stack med-pay benefits, it is insulated from bad faith liability and punitive damages. Conse-

quently, it will be liable only for contract damages. Though this may result in a windfall for insureds whose medical bills were paid by another source or written off, it is less of a windfall than Mountain West would receive if it were allowed to keep money it should have paid out.

Contrarily, it may be difficult for Mountain West to determine who is owed additional payments and how much is owed to each. This would be especially true if no limits are placed on how far back Mountain West must go. However, as discussed *infra,* Mountain West will not be required to re-open cases back to the beginning of its existence, a burden that would be substantially inequitable. Rather, who is eligible to receive stacked med-pay benefits will be limited. Considering these limits, and balancing potential inequities to each party, Mountain West has not established that retroactive application will lead to a substantially inequitable result.

## C. Certification of Class

Burton seeks class certification under Rule 23(a) and (b)(2) with Michael Burton and Patricia Jangula to act as class representatives. According to Plaintiff, the class will be defined as:

> [i]dentifiable insureds under Mountain West Farm Bureau Mutual Insurance, Co.'s automobile insurance policies issued or renewed in the State of Montana prior to May 2, 1997, who (a) were injured in an automobile accident; (b) were insured under two or more medical pay coverages; (c) incurred medical expenses exceeding at least one such medical pay coverage; (d) did not receive medical payments under the other stackable medical pay coverages.

### 1. Rule 23(a)

Fed.R.Civ.P. 23(a) establishes four prerequisites for every class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representa-

---

12. Burton's argument here is similar to his argument opposing Mountain West's reasonable basis in law argument. Namely, Burton asserts that

the long-standing public policy the Montana Supreme Court relied on in deciding *Holeman II* clearly foreshadowed its decision.

tive parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. The plaintiff bears the burden of establishing the four prerequisites. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citations omitted). To determine whether the prerequisites of Rule 23(a) are satisfied, a court must engage in a rigorous analysis, *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), though an extensive evidentiary showing is not required. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). A court must have sufficient information "to form a reasonable judgment on each requirement." *Id.* In making its determination, a court must accept as true the substantive allegations of the class claim, *id.* at 901 n. 17, and does not examine the merits of the case. *Id.* at 901.

Mountain West argues that Burton has not established any of the elements necessary to certify a class. It contends that the alleged size of the class is based solely on speculation and that the class lacks commonality and typicality because each member's claims, and the defenses to those claims, will be different. Additionally, Mountain West argues that neither Burton nor Jangula have standing to represent the class, as Burton's claims are moot because he has been paid his stacked benefits, while Jangula's claims are barred by the statute of limitations.

**(a) Class size**

■ Burton estimates the class will constitute more than 150 people. This figure is based on an affidavit by Marsha Weidner in which she indicates that between May 1994 and May 1997, 102 Mountain West insureds exceeded their initial med-pay coverage. Because the time-frame is only three years, Burton concludes the class will contain at least 50 more people.

Burton has established by more than mere speculation that the proposed class will constitute at least 100 members. A class proponent need not give an exact estimate of class size; only a reasonable estimate is required. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Ms. Weidner's affidavit establishes that the proposed class constitutes at

least 100 to 150 people, which is sufficient to demonstrate numerosity under Rule 23(a)(1). Additionally, while not impossible, it would be impracticable to join 100 to 150 people as plaintiffs. Rule 23(a)(1) requires that joinder of all potential class members be impractical, not impossible. *Id.* Even with 100 members, joinder of each would be difficult and a drain on the parties' and judicial resources.

**(b) Commonality**

The prerequisite of commonality requires the existence of at least one question of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). One question common to the members of this proposed class is whether Mountain West's failure or refusal to stack med-pay benefits under multiple policies violated common provisions of the insurance policies and/or the UTPA. The requirements under Rule 23(a)(2) are minimal, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998), and this common question is sufficient.

**(c) Typicality**

■ Mountain West argues that Burton's claims are not typical of the purported class because the specific facts of each persons' claims will be different. In the Ninth Circuit, the test of typicality

is whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Hanon*, 976 F.2d at 508 (citations omitted). Typicality does not refer to the specific facts from which a claim arose or to the specific relief sought. *Id.* So long as the named representative's claim arises from the same course of conduct that forms the basis of the class claims, and is based upon the same legal theory, differences between the claims or defenses of the class and the class representative will not render the named representative's claim atypical. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.1982).

Mountain West sets forth multiple reasons why it believes Burton and Jangula are not members of the purported class. Though a

motion for class certification is not the appropriate time to resolve the merits of a claim, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), courts may consider evidence that goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case. *Hanon,* 976 F.2d at 509 (citations omitted). "[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* at 508 (citations omitted).

█ Mountain West's arguments, though unavailing as to Burton, are well-taken as to Jangula. For Burton, the typicality requirement is met because the injury he claims to have suffered is the same as that suffered by the class as a whole, and all injuries arise from the same course of conduct allegedly pursued by Mountain West: refusal to pay stacked medical payments.[13] The specifics of Burton's claims are not relevant to determining the propriety of class certification. *See Blackie,* and *Eisen, supra.* By definition the class action claim is based on conduct that is not unique to Burton; the class comprises individuals to whom Mountain West had failed or refused to pay stacked med-pay benefits.

█ Contrarily, Jangula's claim is not typical. Though her claims are similar in that she qualified for stacked benefits yet was paid only the limits of one premium, her claim arose in 1991, or nine years before suit was filed. This is outside the eight-year statute of limitations. *See* Mont.Code Ann. § 27–2–202(1). While the merits of a claim generally are not considered in ruling on a motion for class certification, whether a potential member's claim is time-barred can be considered. *See e.g., Duprey v. Connecticut Department of Motor Vehicles,* 191 F.R.D. 329, 341 (D.Conn.2000); *Schmidt v. Interstate Federal Savings & Loan Association,* 74 F.R.D. 423, 428 (D.D.C.1977). In this case, consideration of the statute of limitations is necessary to defining the boundaries of the class.

Burton has made arguments in support of joining Jangula that contradict his position in other motions. On the one hand, he argues that *Holeman II* was based on a long-standing policy and Mountain West's refusal to stack med-pay benefits was unreasonable, meaning it acted in bad faith and should be liable for punitive damages. However, under this line of reasoning, Jangula's claim would have accrued in 1991 when Mountain West failed to stack her med-pay coverage. To avoid this fate, Burton switches course and argues that Jangula's claim did not accrue until June 1998 when *Holeman II* was decided. In other words, Burton wants to have it both ways: the "long-standing" policy applies to Mountain West to preserve his bad faith and punitive damages claims, while a later accrual date applies to Jangula to preserve her claims. Of course, as the cliche goes, you cannot have your cake and eat it, too. With retroactive application, the claims accrued when Mountain West failed to stack. Because the failure to stack Jangula's claims occurred more than eight years before suit was filed, her claim is time-barred and she cannot serve as a class representative.

### (d) Adequate representation

Finally, Burton will adequately represent the class. The named plaintiff must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). This, in turn, consists of two requirements: (1) the named plaintiff's counsel must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the named plaintiff must not have any interest antagonistic to those of the class. *Securities & Exchange Commission v. Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992).

Burton's attorneys are experienced in class action and insurance litigation and are able to properly conduct this case. Additionally, while some aspects of Burton's claims may differ from other class members', he has no interests that are adverse to the class. Therefore, he is an adequate representative and the prerequisites of Fed.R.Civ.P. 23(a) are met.

**13.** Burton would be a member of the larger class and the subclass.

## 2. Rule 23(b)

### (a) Propriety of Rule 23(b)(2)

 In addition to satisfying the prerequisites of Rule 23(a), parties seeking class certification must show the suit is maintainable under at least one of the grounds in Rule 23(b). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Burton seeks certification under Fed.R.Civ.P. 23(b)(2). This subsection provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Certification under Rule 23(b)(2) is inappropriate where the relief requested is predominately money damages, rather than injunctive or declaratory relief. *Zinser v. Accufix Research Institute Inc.,* 253 F.3d 1180, 1195 (9th Cir.2001). A class seeking monetary damages is certifiable under Rule 23(b)(2) when such relief is incidental to the primary claim for injunctive relief. *Id.*

 In general, the class Burton wants certified "seeks uniform interpretation and enforcement of the legal duties pertaining to identical insurance policy provisions." More specifically, it seeks:

a judicial determination that additional medical payments are due an payable under the stacked coverages, a judicial declaration that, by withholding such payments and concealing and/or misrepresenting the coverages, [Mountain West] violated the Unfair Claims Settlement Practices Act and committed deceit, together with injunctive relief compelling payments with interest, and an assessment of punitive damages. The class claim seeks uniform interpretation and enforcement of the legal duties pertaining to identical insurance policy provisions.

Mountain West argues that certification under Fed.R.Civ.P. 23(b)(2) is inappropriate because Burton seeks primarily money damages. It construes additional payments under stackable insurance policies as damages, while Burton construes them as equitable relief enforcing the terms of the insurance contract. Burton claims that "the primary relief sought is declaration of contract rights and specific performance through an injunction forcing defendant to honor the contract terms ... [and] an injunctive remedy in the form of an order compelling payment of benefits as the remedy for [the defendant's] breach['s]." Pl. Reply Br., at 17.

A class certified under Rule 23(b)(2) may seek "incidental" money damages. *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986). Incidental damages appropriate under Rule 23(b)(2) certification should arise from wrongs to the class as a whole, not from circumstances that require fact finding on individual class members' cases. *Jefferson v. Ingersoll International, Inc.,* 195 F.3d 894, 896 (7th Cir.1999); *Lemon v. International Union of Operating Engineers,* 216 F.3d 577, 581 (7th Cir.2000); *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998). Here, despite Burton's claim that monetary damages are merely incidental, it is apparent that money damages are more important than equitable relief. Though couched in terms of seeking equitable relief, "an injunctive remedy in the form of an order compelling payment of benefits" is nothing more than a request for money damages for breach of contract. Additionally, any declaratory ruling would necessarily require fact finding for each individual class member and for punitive damage claims. *See Jefferson; Lemon; Allison, supra.*[14]

Each class member in an action for money damages is entitled to personal notice and an opportunity to opt out of the class as a matter of due process. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 844–48, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

If the action proceeds under Rule 23(b)(3), then each member of the class must re-

---

14. An additional consideration in deciding whether money damages are the primary form of relief sought is whether, in the absence of such relief, would the plaintiffs still bring suit. *Robinson v. Metro–North Commuter Railroad Co.,* 267 F.3d 147, 164 (2d Cir.2001), *cert. denied* 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002). Here, it is doubtful Burton would be pursuing these claims if money damages were not possible.

ceive notice and an opportunity to opt out and litigate (or not) on his own behalf. If it proceeds under Rule 23(b)(2), by contrast, then no notice will be given, and no one will be allowed to opt out. Because of this difference, Rule 23(b)(2) gives the class representatives and their lawyers a much freer hand than does Rule 23(b)(3). Although class members who want control of their own litigation are vitally concerned about the choice, so too are defendants— for the final resolution of a suit that proceeds to judgment (or settlement) under Rule 23(b)(2) may be collaterally attacked by class members who contend that they should have been notified and allowed to proceed independently.

Defendants who want the outcome of a damages action (no matter which side wins) to be *conclusive* favor Rule 23(b)(3), because it alone insulates the disposition from collateral attack by dissatisfied class members.

*Jefferson,* 195 F.3d at 896–97 (emphasis in original) (citation omitted).

### (b) Applicability of Rule 23(b)(3)

Because money damages are the primary component of relief sought, certification under Rule 23(b)(2) without notification and opt-out provisions would be improper. Courts have three options in such cases. *Id.* at 898–99. First, the Court can certify the class under Rule 23(b)(3); second, the Court can divide certification between Rule 23(b)(2) for the portions addressing equitable relief and Rule 23(b)(3) for the portions addressing damages; finally, the Court can certify the class under Rule 23(b)(2) for both monetary and equitable remedies but exercise plenary authority under Rule 23(d)(2) and Rule 23(d)(5) to provide all class members with personal notice and an opportunity to opt out. *Id.*

Here, certification under Rule 23(b)(3) is the appropriate option. Under this subsection, a court may certify a class only if it first determines that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

For certification under Rule 23(b)(3), common questions must predominate over individual interests. *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231. The predominance requirement is more demanding than the commonality requirement of Rule 23(a). *Id.* "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser,* 253 F.3d at 1189 (*quoting Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996)). Predominance is determined by weighing the significance of common issues, not by counting their numbers. *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 627 (5th Cir.1999). Here, common questions predominate over individual interests. The most significant aspect of this case is whether Mountain West denied stacking benefits to its insureds, and this question is common to all.

To determine superiority of a class action, courts must also consider four factors delineated in Rule 23(b)(3). *Zinser,* 253 F.3d at 1190. In this case, it is unlikely that many individuals would choose to opt out of the class and pursue a claim individually. Thus, the class will likely represent a majority of potential members. Likewise, this litigation has progressed sufficiently that it would be inefficient to not certify the class. The Court is not aware of any individual claims of potential class members, nor should identification of the putative class, which is comprised of Montana insureds, be difficult. Finally, notification and management of the class should not deter class certification. Therefore, administration of this case as a class action is the superior method.

### 3. Identification of class

All of the above being considered, there is still the issue of class identification. After considering all of the issues, it is apparent that two classes exist: a primary class of insureds with contract claims and a subclass of insureds with tort claims, as well. First, there are insureds who have breach of contract claims. The contract claims arose out of Mountain West's failure or refusal to stack med-pay benefits and are based on the written insurance contract. This group includes

all persons who had claims that would have been eligible for stacking, but where stacked benefits were denied or refused, within the eight years preceding the filing of this suit. Thus, any insureds with claims that were open and the refusal to stack was made on or after June 8, 1992.

The second group is a subclass within the first. Because the Court has determined that Mountain West's refusal to stack med-pay benefits before *Holeman II* was not wholly unreasonable, it is insulated from tort and punitive damages liability for claims it failed or refused to stack pre-*Holeman II*. However, this protection does not extend to any refusal or failure to stack *after* the decision in *Holeman II*. The insureds who fall within this subclass are those who had open claims and were eligible for stacked med-pay benefits at the time *Holeman II* was decided. The members of this subclass have potential claims for tort and punitive damages.[15]

Accordingly, based on the foregoing, the larger class will be defined as follows:

Identifiable insureds under Mountain West Farm Bureau Mutual Insurance, Company's automobile insurance policies issued or renewed in the State of Montana before May 2, 1997, who (a) were injured in an automobile accident; (b) were insured under two or more medical pay coverages; (c) incurred medical expenses exceeding at least one such medical pay coverage; (d) did not receive medical payments under the other stackable medical pay coverages; (e) whose claims were open on or after June 8, 1992.

Additionally, the sub-class within the above-mentioned class will be defined as:

Identifiable insureds under Mountain West Farm Bureau Mutual Insurance, Company's automobile insurance policies issued or renewed in the State of Montana before May 2, 1997, who (a) were injured in an automobile accident; (b) were insured under two or more medical pay coverages; (c) incurred medical expenses exceeding at least one such medical pay coverage; (d) did not receive medical payments under the other stackable medical pay coverages;

(e) whose claims were open on or after June 18, 1998.

### D. Burton's Motion to Allow Jangula to Intervene & Mountain West's Motion for Summary Judgment on Jangula's Claims

As noted above, the Court has determined that the class excludes claims that were closed before June 8, 1992. Because Jangula's claim was closed in 1991, her claims against Mountain West are time-barred.

### E. Burton's Motion for Partial Summary Judgment re Leveraging Mountain West's Motion for Partial Summary Judgment re Reasonable Basis to Request Offset

Whether Mountain West was attempting to influence settlement of other claims by requesting an offset is a factual question. At this point, there is a dispute as to whether Mountain West intended to leverage. Additionally, the purpose of the offset and whether it was made on behalf of the Truscott Estate or on behalf of Mountain West are factual issues that cannot be decided at this stage of the proceedings. Therefore, summary judgment for either party is not appropriate at this time.

### F. Mountain West's Motion to Bifurcate Claims

The Court has discretion under Fed. R.Civ.P. 42(b) to bifurcate claims for trial. The burden is on the moving party to show bifurcation is warranted.

Mountain West asks the Court to bifurcate the trial in this matter, with Burton's claims regarding failure to pay liability benefits being tried separately from his claims regarding failure to stack med-pay benefits. Mountain West argues that the claims involve separate fact considerations and bifurcation would avoid prejudice and confusion. Burton objects to the request, arguing bifurcation would be unnecessarily expensive and inconvenient.

---

**15.** The insureds who fall within the smaller subclass necessarily fall within the larger class, as well. Of course, the converse is not true.

The risk of prejudice to Mountain West from trying all issues together does not outweigh the delay, expense, and inconvenience that would result from bifurcation. Bifurcation would require the parties, attorneys and many witnesses to go through two trials, thereby delaying a final judgment. Mountain West has not satisfied its burden of proving that the prejudice it may suffer outweighs these other concerns. Additionally, any prejudice to Mountain West can be cured through limiting instructions. Therefore, the Court will not exercise its discretion to bifurcate the trial of claims in this case.

## G. Burton's Motion to File Amended Complaint

 Burton asks the Court to allow him leave to file an amended Complaint. Burton wants to add a discrimination claim under Mont.Code Ann. § 33–18–206(2) based on Mountain West's decision to pay stacked med-pay benefits to insureds with claims that were open when *Holeman II* was decided, but not to those insureds with closed claims. Burton maintains that he only recently learned of the alleged discrimination.

Mountain West objects to the proposed amendment. It maintains that (1) an amended complaint is untimely; (2) the information Burton bases his discrimination claim on is not new; and (3) a discrimination claim is not cognizable as an individual claim under the UTPA.

Mountain West has the better argument. Regardless of the timeliness of the proposed amendment or when Burton should have discovered the information, amendment would be futile. As the UTPA states, claims an individual may bring are limited by § 33–18–242(3). Discrimination claims are not included in this exclusive list. Because Burton's proposed additional claim would not survive a motion to dismiss, amendment would be futile and the Court need not allow it. *Newland v. Dalton,* 81 F.3d 904, 907 (9th Cir. 1996).

## III. Order

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's Motion to Allow Patricia Jangula to Intervene as Class Representative (dkt # 31) is DENIED.

2. Defendant's Motion for Summary Judgment on Jangula's Claims (dkt # 57) is GRANTED.

3. Plaintiff's Motion for Partial Summary Judgment re Leveraging (dkt # 74) is DENIED.

4. Defendant's Motion for Partial Summary Judgment re Reasonable Basis to Request Offset for Medical Payments (dkt # 80) is DENIED.

5. Defendant's Motion for Partial Summary Judgment re Reasonable Basis in Law to Enforce Non–Stacking Provisions of Policy (dkt # 25) is GRANTED.

6. Plaintiff's Motion for Class Certification (dkt # 32) is GRANTED as set forth above. The class and sub-class defined above are certified under Fed.R.Civ.P. 26(b)(3).

(a) Within 20 days of entry of this Order, Mountain West shall supply Burton with the names and addresses of all persons within the class and sub-class definitions;

(b) Within 30 days of entry of this Order, Burton shall file with the Court a proposed notice and distribution plan that provides to the class and sub-class members the best notice practicable under the circumstances. The notice and plan shall comply with the requirements of Fed.R.Civ.P. 23(c)(2);

(c) Within 40 days of entry of this Order, Mountain West shall file a response to the proposed notice and distribution plan; and

(d) Following Court approval, Burton shall distribute the notice to the class and sub-class members in accordance with the distribution plan.

7. Defendant's Motion for Partial Summary Judgment re Retrospective Application of *Holeman II* (dkt # 99) is DENIED.

8. Defendant's Motion to Bifurcate Claims (dkt # 112) is DENIED.

9. Plaintiff's Motion to File Amended Complaint (dkt # 132) is DENIED.

10. Plaintiff's Motion to Compel Defendant to Produce Documents for *In Camera* Review (dkt # 27) is DENIED as moot.[16]

---

16. Because Mountain West has produced the documents sought by Burton, the Motion to Compel is moot. After reviewing the documents, the Court will order production, if applicable, by separate order.